[L. A. No. 16635.   In Bank.—January 24, 1939.]

A. A. BROCK, as State Director of Agriculture, etc., et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, Walter L. Bowers, Deputy Attorney-General, Ivan G. McDaniel and Ferrand & Slosson for Petitioners.

J. H. O'Connor, County Counsel, A. Curtis Smith, Deputy County Counsel, Stewart, Shaw & Murphey, Arvin B. Shaw, Jr., and William L. Murphey for Respondents.

EDMONDS, J.—By this proceeding in prohibition, the Director of Agriculture, certain officers of that department, and a number of growers of citrus fruits who are members of committees appointed for the administration of the Agricultural Adjustment Act of this state (Stats. 1935, p. 1032;

Deering's Gen. Laws, Act 146), seek to compel the respondent Superior Court to dissolve a temporary injunction which was issued in an action brought against them by Harry W. Forbes and others to enjoin the enforcement of a plan for the regulation of intrastate marketing of grapefruit. They contend that the validity of the statute has been upheld by this court in the case of *Brock* v. *Superior Court,* 9 Cal. (2d) 291 [71 Pac. (2d) 209, 114 A. L. R. 127], and that the complaint upon which the injunction was issued presents no questions of fact such as those which required the denial of a similar petition in the case of *Agricultural Prorate Com.* v. *Superior Court,* 5 Cal. (2d) 550 [55 Pac. (2d) 495].

Upon this petition an alternative writ of prohibition issued to which the respondents have filed a general demurrer. In support of the demurrer they contend that prohibition is not a proper remedy because the superior court has jurisdiction of the cause of action and that the constitutionality of a statute should be determined only in relation to the facts of a particular case as found by a trial court. By answer they allege facts which they contend show that the statute, as the Director of Agriculture is attempting to enforce it under a license issued by him for the purpose of regulating the marketing of citrus fruits, unlawfully interferes with the property rights of those persons who were granted an injunction. The respondents also attack on many different grounds the entire plan of agricultural regulation set up by this marketing license. According to them, the plan was devised for the purpose of putting into effect an economic theory known as "the philosophy of scarcity", which is based upon the assumption that the agricultural depression may be cured by restricting the production of food. By allowing only a portion of the grapefruit produced in this state to be marketed here, many growers will be unable to make a profit and will fail, with the result that a large number of acres will go out of production and with less fruit available, the consumer will be forced to pay higher prices. They allege that this amounts to the confiscation of property in violation of constitutional guarantees. More specifically, they charge that the license issued to regulate intrastate marketing and also the one which was adopted by federal authorities are invalid.

The record presented by the petitioners shows that the injunction which they are seeking to dissolve by this proceeding prevents them from enforcing or attempting to enforce the terms and provisions of a marketing license promulgated by the Director of Agriculture, and all rules and regulations made under the Agricultural Adjustment Act of this state. It was issued upon a complaint which alleges not only that the statute as written is unconstitutional, but also that as the defendants are attempting to apply it to the plaintiffs' property rights, it is discriminatory and confiscatory. The court is asked to (1) determine and declare the right of the Director of Agriculture to promulgate the license issued by him in 1936; (2) enjoin the defendants from prescribing any allotment, quota or prorate of grapefruit allowable to be packed, shipped or marketed by them; and (3) prohibit the enforcement as against them of any of the provisions of the act.

Another action brought by a group of orange growers to prohibit the enforcement of the Agricultural Adjustment Act in this state was commenced at the same time as the Forbes case. (*Pico Citrus Assn.* v. *Brock,* Los Angeles Superior Court, No. 401753.) In that case the act was attacked upon grounds similar to those advanced in the Forbes case, and the Superior Court issued a preliminary injunction.

Thereafter, the Director of Agriculture and others enjoined upon the complaint of the Pico Citrus Association secured from this court a peremptory writ of prohibition restraining the Superior Court from enforcing its injunction. (*Brock* v. *Superior Court,* 9 Cal. (2d) 291 [71 Pac. (2d) 209, 114 A. L. R. 127].) After the determination of that proceeding the defendants in the Forbes case moved the Superior Court to dissolve the preliminary injunction against them, which motion was denied.

The petitioners place their principal reliance upon section 3423 of the Civil Code which provides that ''an injunction cannot be granted . . . to prevent the execution of a public statute, by officers of the law, for the public benefit''. This section has been construed as a limitation upon the power of a court to restrain public officers from enforcing a valid law (*Reclamation District* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845]), but it has uniformly been held that one specially interested may enjoin the attempted

execution of an unconstitutional statute. (*Bueneman* v. *City of Santa Barbara,* 8 Cal. (2d) 405, 407 [65 Pac. (2d) 884, 109 A. L. R. 895] ; *Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 Pac. 14] ; *Wheeler* v. *Herbert,* 152 Cal. 224 [92 Pac. 353] ; *Schofield* v. *City of Los Angeles,* 120 Cal. App. 240 [7 Pac. (2d) 1076].) ■ And although certain provisions of the law under which the petitioners in the present proceeding assumed to act have been upheld (*Brock* v. *Superior Court, supra*), a statute valid upon its face may be unconstitutionally applied. (*Yick Wo* v. *Hopkins,* 118 U. S. 356, 373 [6 Sup. Ct. 1064, 30 L. Ed. 220].) Therefore, if the complaint in the action brought by Forbes and his coplaintiffs shows that the petitioners threatened to enforce an unconstitutional law against them, or that their acts in the attempted application of a valid law violated rights guaranteed to all citizens by either the federal or state Constitution, the Superior Court had jurisdiction to issue an injunction pending a hearing and decision upon the issues presented, and the petition for a writ of prohibition must be denied.

The allegations of the complaint cover a wide range. They present facts which the plaintiffs assert compel a conclusion that the license issued by the Director of Agriculture allowing each marketer of citrus fruits to ship, in intrastate commerce only the amounts of grapefruit to be fixed by that official from time to time, is invalid. Specifically, it is alleged that the license regulates the transportation of all oranges and grapefruit grown in the state of California and that the marketing of desert grapefruit is a specific and naturally inherently and intrinsically distinctive agricultural trade or industry which cannot be regulated under the provisions of the act in combination with other citrus fruits. In support of this contention the complaint states that the citrus business of California comprises at least three different agricultural industries, namely, the growing and marketing of oranges, coastal grapefruit and desert grapefruit. It is also alleged that 93 per cent of all oranges grown in California are shipped outside of the state but that more than 60 per cent of the crop of desert grapefruit and 40 per cent of all coastal grapefruit produced is consumed here.

According to the plaintiffs' allegations the desert grapefruit of California differs materially from the coastal variety and is grown under conditions which insure production at much less cost. The plaintiffs set forth at great length. the

climatic characteristics of the counties in which each variety is raised and the culture which must be used under the various conditions. Because of the rainfall, soil and climate in the desert counties, say the plaintiffs, the grapefruit grown there has a sugar and juice content different from that grown in a colder temperature, and the crop must be picked and marketed during the period from November 1st of each year to March 15th of the succeeding year and consumed before the following May 1st. The coastal grapefruit is picked, sold and consumed from April to November of each year.

By their amended complaint the plaintiffs also assert that the purpose of the regulation placed upon the citrus industry by the defendants is to limit and reduce shipments of grapefruit grown in California and Arizona to such an extent as to cause an artificial scarcity in the market and thereby bring the price received by the grower to $2.57 per box; that the product cannot be sold at that price in competition with California and Arizona oranges and that by the device of fixing weekly allotments allowable for shipment in intrastate commerce the defendants will compel growers, including the plaintiffs, to allow one-third or more of their crop to spoil and be destroyed. That by reason of the temporary restraining order issued upon the original complaint, from November 1, 1935, to March 31, 1936, the producers and shippers of desert grapefruit were able to sell and deliver the fruit grown by them with an average price return within a few cents per box of that received during the prior four-year period; "that the amount of money returned in said five-months' period of the crop year 1935–36 to the growers of said grapefruit, with which to operate their said grapefruit groves, was approximately four times the amount of money returned to said growers in the same five-months' period of the crop year 1934–35 and approximately twice the amount of money returned to the said growers of said grapefruit in the same five-months' period of the crop year 1933–34".

Under the California Agricultural Adjustment Act of 1935, the Director of Agriculture has power to license persons engaged in intrastate marketing transactions, provided that "whenever one such person is licensed the director at the same time shall subject all persons engaged in the same specific and naturally, inherently and intrinsically distinctive agricultural business trade or industry to the same identical license provisions". (Sec. 6a [b].) This language, as a

612

matter of law, does not authorize the Director of Agriculture to regulate the marketing of all agricultural products by one general license fixing a total quota for them divisible ratably between shippers without regard to the difference in the nature of the crop, cost of production, time of harvest, facilities for shipment, amount of demand, price obtainable or other factors which make the conditions under which one agricultural product is marketed distinctly different from those which are applicable to another. ■ The allegations of the plaintiffs' complaint tender as an issue of fact the question whether the marketing of desert grapefruit is an agricultural trade or industry distinctly different from that of marketing other products, and, also, whether the producers of grapefruit are being discriminated against to the profit and advantage of the orange growers and their property. taken without due process of law. The plaintiffs are entitled to the findings of a trial court upon those issues.

■ The validity of the license issued by the Director of Agriculture is also attacked by the plaintiffs. They allege facts tending to show that the Director of Agriculture had no authority to issue the license for marketing citrus fruits which is complained of because at the date it was promulgated, there was no valid "corresponding federal agreement or license regulating such business, trade or industry under the National Agricultural Adjustment Act" as required by the California law. (Sec. 6a.) Admittedly, however, the Secretary of Agriculture had issued a license under the federal statute, but the respondents contend that this license is invalid.

The facts relied upon by the plaintiffs in this connection are pleaded at length. They assert that some time before the Director of Agriculture issued the license in question the California Fruit Growers Exchange and others filed with the Secretary of Agriculture a petition for the purpose of invoking the provisions of the federal Agricultural Adjustment Act of 1933 (48 Stats. at Large, 31.) Thereafter the Secretary of Agriculture, claiming to act under that law, entered into an agreement with certain shippers of oranges and grapefruit in California and Arizona, not including the plaintiffs, and issued a license regulating the amount of such fruit which each one could market in interstate commerce. Later and in 1935, the Secretary of Agriculture

issued a marketing order purporting to regulate the handling of oranges and grapefruit in these states. Pursuant to that order, the Secretary of Agriculture appointed certain persons as members of a "Growers Advisory Committee" and other persons as members of a "Distribution Committee". All of these persons, or their successors, are defendants in the action brought by Forbes and are petitioners in the present proceedings.

The complaint charges that upon the hearing which preceded the issuance of this license, no evidence was taken respecting the purchasing power of grapefruit grown in California during the base period from November, 1924, to October, 1928, inclusive; that the license "has never been approved or favored by a vote of producers who during any representative period determined by the Secretary of Agriculture have produced for market two-thirds of the volume of oranges and grapefruit, or either thereof, produced for market within California or Arizona or by either of said states, nor by any other group or number of producers required by said Agricultural Adjustment Act of 1933, as amended, to approve such order before it shall be effective"; that no desert grapefruit was grown or produced for market within the state of California in the base period established by the act; and that the order has never been approved by the President of the United States.

These allegations present the factual basis for the plaintiffs' contention that when the California license for intrastate marketing was issued, there was no valid federal agreement or license regulating the same agricultural trade or industry under the national Agricultural Adjustment Act. The issue thus tendered does not involve the right of federal officers to enforce the license issued by the Secretary of Agriculture under the law of this state, and the superior court has jurisdiction to determine whether these conditions fixed by the legislature as a prerequisite for regulation of intrastate marketing existed at the time the Director of Agriculture assumed to act. (*State* v. *American Express Co.*, 38 S. D. 227 [161 N. W. 132] ; *Stephenson* v. *New Orleans & N. E. R. R. Co.*, 180 Miss. 147 [177 So. 509].)

Also a broad principle underlying the construction of statutes which, it is charged, deprive one of constitutional rights compels a trial of the issues presented by the plaintiffs' complaint. One who attacks a statute upon that ground has

the burden of showing that his rights have been invaded by the actual or threatened application of the challenged law to him. "But where the legislative action is suitably challenged," said the Supreme Court of the United States in a recent case, "and a rational basis for it is predicated upon the particular economic facts of a given trade or industry, which are outside the sphere of judicial notice, these facts are properly the subject of evidence and findings. With the notable expansion of the scope of governmental regulation, and the consequent assertion of violation of constitutional rights, it is increasingly important that when it becomes necessary for the court to deal with the facts relating to particular commercial or industrial conditions, they should be presented concretely with appropriate determinations upon evidence, so that conclusions shall not be reached without adequate factual support." (*Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194 [55 Sup. Ct. 187, 79 L. Ed. 281].) This rule has been applied in many cases (*Chastleton Corp.* v. *Sinclair,* 264 U. S. 543 [44 Sup. Ct. 405, 68 L. Ed. 841] ; *Hammond* v. *Schappi Bus Line,* 275 U. S. 164 [48 Sup. Ct. 66, 72 L. Ed. 218] ; *Liverpool, N. Y. & P. Steamship Co.* v. *Emigration Commissioners,* 113 U. S. 33 [5 Sup. Ct. 352, 28 L. Ed. 899] ; *Chicago M. etc. Ry.* v. *Tompkins,* 176 U. S. 167 [20 Sup. Ct. 336, 44 L. Ed. 417] ; *Lincoln Gas & Elec. L. Co.* v. *Lincoln,* 223 U. S. 349 [32 Sup. Ct. 271, 56 L. Ed. 466]) and was followed by this court in the case of *Agricultural Prorate Com.* v. *Superior Court, supra.*

Very recently the Supreme Court of the United States again restated the principle which it held controls a court's decision when a defendant urges that constitutional questions presented by the allegations of a complaint should be determined upon demurrer. In the case of *Polk Co.* v. *Glover,* 305 U. S. 2 [59 Sup. Ct. 15, 83 L. Ed. 78 (adv. opn.)], plaintiffs, engaged in the business of canning citrus products grown in the state of Florida, challenged the validity of a statute of that state requiring that every label upon any container of canned citrus fruit or juice shall show accurately the name of the state or country in which the fruit or juice was produced and also that every container used for such fruit or juice produced in Florida "shall have stamped into or embossed upon the tin, glass or other substance of which such container is made" the word "Florida". The bill of complaint set forth facts relating to the character of the trade, the process of can-

ning and the trade practices as to labeling and the effect of a compliance with the statute upon plaintiffs' trade was described in support of the claim that the enforcement of its provisions would inflict immediate and irreparable injury. The defendant officials filed answers putting in issue the allegations as to the injurious effect of the statute upon the plaintiffs' operations and also moved to dismiss the bill upon the ground that it failed to state a cause of action. Injunction was denied, the motions to dismiss were granted and a final decree was entered accordingly.

In reversing the decree and remanding the cause for further proceedings the court said: ''We think that the facts alleged in the bill were sufficient to entitle the plaintiffs to an opportunity to prove their case, if they could, and that the court should not have undertaken to dispose of the constitutional issues (as to which we intimate no opinion) in advance of that opportunity. The allegations of the bill as to trade conditions and practices, and as to the effect of the required embossing of cans, raise particular questions which can hardly be said to lie within the range of judicial notice. The salutary principle that the essential facts should be determined before passing upon grave constitutional questions is applicable. See *Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194, 211–213 [55 Sup. Ct. 187, 79 L. Ed. 281], and cases cited. And that determination requires a hearing in due course upon the issues raised by the pleadings.''

This principle is particularly applicable to the facts alleged by the complaint of the respondents which show that the Director of Agriculture asserts the right to say that only such amount of oranges and grapefruit may be shipped within the state as can be sold for a certain price, although the balance of the crop must spoil on the trees or be destroyed, no matter how great the need for food may be. Certainly such a novel exercise of power should be sustained only after a full showing of facts upon which a decision upholding it may be based.

The decision of this court in the case of *Brock* v. *Superior Court, supra,* is not inconsistent with these conclusions. That case was decided upon a complaint attacking the statute upon grounds different from those presented by the pleadings of Forbes and after the parties had entered into a stipulation eliminating issues of fact. The decision upon

the particular questions presented to the court in that proceeding is not necessarily determinative of the rights of the plaintiffs in the Forbes case.

As another ground for the issuance of the writ demanded by the petitioners they assert that any defects in the license issued by the Director of Agriculture have been cured and validated by the amendments to the Agricultural Adjustment Act which were made in 1937. Section 18, which was added at that time, provides: "Any marketing agreement or license, or both, and each and every provision thereof heretofore executed or issued by the Director of Agriculture are hereby continued in effect and deemed to be within the standards and provisions of these amendments, subject however to the provisions hereof for amendment and termination. . . . " (Stats. 1937, p. 2501; Deering's Gen. Laws, 1937 ed., Act 146.)

However, the 1937 enactment changes the procedure which must be followed by the Director of Agriculture in issuing a license. For example, under the present law, shipments are to be regulated under a "marketing order" instead of a "license" and no such order "shall become effective (a) unless and until handlers, who, during a representative period determined by the director, handled not less than sixty-five per cent (65%) of the volume of the commodity regulated by such marketing order, or not less than 65 per cent of the number of handlers, who, during a representative period determined by the director, were engaged in handling such commodity, have assented thereto in writing, and (b) unless and until the director determines that the issuance of such marketing order is approved or favored, (1) by at least 65 per cent of the producers who, during a representative period determined by the director, have been engaged in the production for market of the commodity regulated by such marketing order, or, (2) by producers who, during such representative period, have produced for market at least 65 per cent of the volume of such commodity produced for market and regulated by such marketing order."

No such approval was required under the 1935 act. By another provision the Director of Agriculture is required to limit shipments so as to establish a price which will "provide an adequate standard of living to the farm operator and his family" (sec. 6), rather than on such basis as will

reestablish prices to farmers and growers at a level that will give agricultural commodities a purchasing power with respect to articles that farmers buy equivalent to their purchasing power during the period of 1909 to 1914, or such other base period as may be selected under certain circumstances.

It seems apparent that any license issued under the 1935 act would not conform to the requirements and measure up to the standards fixed by the 1937 act and the attempted validation of licenses previously issued is, therefore, special legislation forbidden by article IV, section 25, of the California Constitution, which provides that no special law shall be passed "giving effect to invalid deeds, wills, or other instruments", or "legalizing, except as against the state, the unauthorized or invalid act of any officer; . . . " ▮ A special law has been defined as one which "confers particular privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law". (*City of Pasadena* v. *Stimson*, 91 Cal. 238, 251 [27 Pac. 604].) The provision enacted in 1937 purporting to validate licenses previously issued clearly falls within that definition. (See, also, *Miller & Lux., Inc.*, v. *Board of Supervisors*, 189 Cal. 254 [208 Pac. 304]; *Mordecai* v. *Board of Supervisors*, 183 Cal. 434 [192 Pac. 40].)

The demurrer of the respondents is sustained, the alternative writ of prohibition is discharged and the petition for a peremptory writ is denied.

Waste, C. J., Shenk, J., Houser, J., and Seawell, J., concurred.

Rehearing denied.