[No. C004052. Third Dist. July 18, 1990.]

ROBERT G. LUND, Plaintiff and Appellant, v.
CALIFORNIA STATE EMPLOYEES ASSOCIATION et al.,
Defendants and Respondents.

[Opinion certified for partial publication.*]

*Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions is directed to publish all portions of this opinion *except* parts IV, V and VI of the Discussion.

**COUNSEL**

Ernest F. Schulzke for Plaintiff and Appellant.

Christopher W. Waddell, M. Jeffrey Fine and Kenneth R. Hulse for Defendants and Respondents.

## OPINION

**DAVIS, J.**—In this appeal we hold, among other things, that Government Code section 19818.16,[1] which authorizes the Department of Personnel Administration to hear out-of-class compensation claims of state civil service employees, does not unconstitutionally infringe upon the civil service merit principle embodied in the California Constitution. (Cal. Const., art. VII, §§ 1-3.)

Petitioner and plaintiff Robert Lund (Lund) appeals from a judgment in favor of respondents entered after their demurrer to Lund's petition for writ of mandate and complaint for declaratory and injunctive relief was sustained without leave to amend. Named in Lund's suit as defendants and respondents were the Department of Personnel Administration (DPA), the California State Employees Association (CSEA), the State Personnel Board (SPB), and the Employment Development Department (EDD). Lund subsequently dismissed his claims against CSEA. We reverse only to the extent the court sustained without leave to amend Lund's administrative mandamus claim for promotion. In all other respects the judgment is affirmed.

The published portion of this opinion resolves the following two issues: (1) Did Lund exhaust his administrative remedies and, if not, are there any applicable exceptions to the exhaustion requirement; and (2) Does section 19818.16 contravene the civil service merit principle embodied in article VII of the California Constitution?

In the unpublished portion of this opinion we examine Lund's claims regarding due process and promotion, and reject Lund's claims of error regarding a memorandum of understanding, his injunctive and declaratory relief causes of action, his traditional mandamus allegations, his attempt to allege a breach of the covenant of good faith and fair dealing, his section 19818.8 claims and his request for attorney's fees.

### BACKGROUND

On appeal from a judgment following the sustaining of a general demurrer, we accept as true all material, well-pled allegations. (See *Alcorn* v.

---

[1] Unless otherwise indicated, all undesignated statutory section references are to the Government Code.

*Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; *Newton* v. *Kaiser Foundation Hospitals* (1986) 184 Cal.App.3d 386, 388 [228 Cal.Rptr. 890].)

In his petition, Lund alleges he is an auditor II with EDD. He claims EDD has made him perform auditor III duties for several years. In June 1980, he filed a grievance requesting a "wage settlement" for this out-of-class work. This grievance was processed through three levels of review and denied. Lund then filed a claim with SPB, which was denied by SPB staff in September 1982. Lund appealed the denial in a hearing before SPB staff in January 1983; the staff again denied the claim and this decision was adopted by SPB in March 1984.

One year later, Lund petitioned the superior court for writ of mandate and complained for injunctive and declaratory relief; he amended the petition in April 1986. In that amended petition, Lund alleged he had performed auditor III work almost continuously since late 1977, but that his supervisors "did nothing either to promote (him) to Auditor III, to pay him for his 'out-of-class' work, or to allow him to perform the work of an auditor II." He also contended SPB acted illegally in adopting the staff denial without affording a hearing before the full board. Lund's amended petition sought an order directing the relevant state agencies (1) to compensate him for his out-of-class work, and (2) to promote him to auditor III. Lund also sought an injunction to prohibit EDD from assigning him auditor III work and a declaration that such assignments contravened civil service laws and the California Constitution.

Respondents demurred to the April 1986 amended petition and complaint. The trial court sustained the demurrers to the injunctive and declaratory relief causes of action, reasoning that such actions constitute improper challenges to a quasi-judicial decision of an administrative agency. Because the administrative record regarding Lund's SPB appeal could not be located and thereby judicially reviewed, the trial court remanded "for rehearing on those issues raised in the petition."[2]

When the matter was remanded, SPB deemed Lund's first petition for writ of mandate to raise only a claim for out-of-class compensation.

---

[2] In this ruling, the trial court also overruled the demurrers to the petition for writ of mandate. This ruling has no bearing on respondents' demurrer to Lund's postremand second petition for writ of mandate (the petition before us). Even in the same proceeding, a ruling on demurrer is not res judicata and may be reconsidered. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 934, pp. 370-371.)

Pursuant to an interim statutory change (§ 19818.16),[3] the matter was referred to DPA for a hearing on this claim.

On the date of the hearing, March 25, 1987, Lund renewed objections to DPA's assertion of jurisdiction, claiming SPB had jurisdiction to hear the discretionary aspects of out-of-class compensation claims, DPA had a conflict of interest in hearing such claims, and DPA was not equipped to provide the full evidentiary hearing which Lund had understood would be provided. Lund suggested the hearing be continued to resolve these jurisdictional disputes; DPA declined. About a week later, DPA notified Lund it had jurisdiction over his out-of-class compensation claim, which DPA contended was the only matter raised in Lund's remanded first petition. DPA offered to reschedule another hearing if requested by April 13, 1987. On April 13, Lund was granted a one-week extension to request the rehearing. On April 20, Lund refused the offer, claiming DPA lacked jurisdiction and that he would proceed only if granted a full evidentiary hearing.

In June 1987 Lund filed a second petition for writ of mandate, constituting the proceedings before us. He also complained for injunctive and declaratory relief. In that pleading, he requested (1) an end to auditor III assignments while classified as an auditor II, or, in the alternative, compensation as an auditor III, or, in the alternative, promotion to auditor III; (2) SPB jurisdiction over his claims; (3) a full evidentiary hearing with the right to subpoena, examine and cross-examine witnesses under oath; and (4) a determination that certain memorandum of understanding provisions are illegal regarding out-of-class assignment and DPA jurisdiction over out-of-class compensation claims, first negotiated in 1985 between DPA and Lund's bargaining representative, CSEA.

Respondents demurred to this petition and complaint. The trial court sustained the demurrers without leave to amend, reasoning that out-of-class compensation claims do not necessarily invoke the merit principle, that DPA was created to manage the nonmerit aspects of the state's personnel

---

[3] Section 19818.16 was enacted in 1985 and became effective, as an urgency measure, on September 26, 1985. (Stats. 1985, ch. 1015, §§ 20, 23.) It provides: "(a) Notwithstanding Sections 905.2, 19818.8, and 19823, the department shall have the authority to review employee claims for additional reimbursement for the performance of duties outside the scope of their present classification and to authorize additional reimbursement for those duties. The department shall award employee claims under this section for a period no greater than one year preceding the filing of a claim. [¶] (b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if those provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

system, that Lund was afforded due process, and that he failed to exhaust his administrative remedies or provide any evidence at the DPA hearing.

At the demurrer hearing, Lund attempted to amend his pleading by adding a cause of action for breach of the implied covenant of good faith and fair dealing based on his failure to be promoted. The court refused to recognize this proposed amendment because it was untimely and failed to state a cause of action cognizable in an administrative writ proceeding.

Judgment was then entered in accordance with these rulings.

## DISCUSSION

### I

In reviewing the sufficiency of an affirmative pleading against a general demurrer, " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is . . . sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Moreover, " 'the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.' " (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64], quoting *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].) A demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503].)

### II

The issue of whether Lund exhausted his administrative remedies is appropriate in this demurrer proceeding because Lund admitted in his petition that he did not present his out-of-class compensation claim to DPA. This constitutes an allegation of a material fact. In contrast, Lund's allegation that he exhausted administrative remedies constitutes a contention and a legal conclusion, and for those reasons is not considered in judging the

sufficiency of his pleading. (*County of Los Angeles* v. *Farmers Ins. Exchange* (1982) 132 Cal.App.3d 77, 83 [182 Cal.Rptr. 879].)

■ " 'In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' " (*County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 73 [222 Cal.Rptr. 750], quoting *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715].) The reason for the rule is that if a court allowed a suit to be maintained prior to final administrative determination, the court would be interfering with the subject matter jurisdiction of another tribunal. (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, p. 265.) Consequently, the rule is jurisdictional. (*Ibid.*; *County of Contra Costa, supra.*)

■ The rule applies to actions raising constitutional issues. (*County of Contra Costa, supra*, 177 Cal.App.3d at p. 74.) However, it does not apply to an action challenging the constitutionality of the administrative agency's statute. (*Id.* at pp. 74-75; *State of California* v. *Superior Court* (*Veta*) (1974) 12 Cal.3d 237, 250-251 [115 Cal.Rptr. 497, 524 P.2d 1281] (*Veta*).) *Veta* explained the reason for this exception: "It would be heroic indeed to compel a party to appear before an administrative body to challenge its very existence and to expect a dispassionate hearing before its preponderantly lay membership on the constitutionality of the statute establishing its status and functions." (12 Cal.3d at p. 251.)

Section 19818.16 mandates that DPA will hear claims for out-of-class compensation. Lund challenges that mandate on constitutional grounds. Accordingly, that specific challenge falls within the *Veta* exception and we turn to that issue.

### III

■ Lund contends section 19818.16 unconstitutionally infringes upon the merit principle embodied in article VII, sections 1 through 3, of the California Constitution. Essentially he argues that out-of-class compensation claims are merit related and cannot be heard by DPA because DPA's jurisdiction is limited to nonmerit issues. (§ 19815.2.) In support of this argument, Lund relies on article VII, section 1, subdivision (b), which sets forth the merit principle, and section 3, subdivision (a), which provides in part that *SPB* "shall enforce the civil service statutes and . . . prescribe . . . classifications . . . ."

■ Before addressing these matters, we must consider Lund's argument, premised on *D'Amico* v. *Board of Medical Examiners* (1970) 6

Cal.App.3d 716 [86 Cal.Rptr. 245] and *Brock* v. *Superior Court* (1939) 12 Cal.2d 605 [86 P.2d 805], that these constitutional questions should not be decided on demurrer but rather at a full-scale hearing. We are unpersuaded. The constitutional question in *D'Amico* was factually based: did facts exist justifying the legislative distinction between medical doctors and osteopaths? (6 Cal.App.3d at pp. 727-728.) Similarly, the constitutional question in *Brock* was factually based. (12 Cal.2d at pp. 614-615.) In contrast, the constitutional challenges asserted here present only legal issues, and can adequately be presented in these proceedings.

Some background will place our analysis in perspective. To combat the "spoils system" of political patronage in state employment, the California Legislature in 1913 statutorily created California's first civil service system. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 182, 204 [172 Cal.Rptr. 487, 624 P.2d 1215].) By the early 1930's, it was clear this statutory system was not working. (*Id.* at p. 182.) In response, the people in 1934, through an initiative vote, added article XXIV to the state Constitution. (*Ibid.*) Article XXIV created the nonpartisan, politically insulated SPB and vested it with the power to enforce the state civil service laws. (*Id.* at pp. 204-205.) Article VII, sections 1 through 3, identical in text to the same sections of article XXIV, were added to the state Constitution following the repeal of article XXIV in 1976. (Cal. Const., art. VII, §§ 1-3, "Historical Note.")

Article VII, section 1 of the California Constitution provides: "(a) The civil service includes every officer and employee of the state except as otherwise provided in this Constitution. [¶] (b) In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination."

Article VII, section 2 of the California Constitution provides in pertinent part: "(a) There is a Personnel Board of 5 members appointed by the Governor and approved by the Senate, a majority of the membership concurring, for 10-year terms and until their successors are appointed and qualified . . . . [¶] (c) The board shall appoint and prescribe compensation for an executive officer who shall be a member of the civil service but not a member of the board."

Article VII, section 3 of the California Constitution provides: "(a) The board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions. [¶] (b) The executive officer shall administer the civil service statutes under rules of the board."

■ We also set forth the fundamental principles of constitutional adjudication by which we are guided. " 'Unlike the federal Constitution, which

is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers *which are not expressly, or by necessary implication denied to it by the Constitution.* [Citations.] . . . [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. *Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.*" [Citations.]' [] (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161].) ■ [¶] Moreover, our past cases establish that the presumption of constitutionality accorded to legislative acts is particularly appropriate when the Legislature has enacted a statute with the relevant constitutional prescriptions clearly in mind. (See, e.g., *San Francisco* v. *Industrial Acc. Com.* (1920) 183 Cal. 273, 279 [191 P. 26].) In such a case, the statute represents a considered legislative judgment as to the appropriate reach of the constitutional provision. Although the ultimate constitutional interpretation must rest, of course, with the judiciary (see *Marbury* v. *Madison* (1803) 5 U.S. (1 Cranch) 137, 176-180 [2 L.Ed. 60, 73-74]), a focused legislative judgment on the question enjoys significant weight and deference by the courts." (*Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 180, italics in original.)

■ *Pacific Legal Foundation* is the critical decision in our section 19818.16 analysis. In that case our high court rejected claims that the State Employer-Employee Relations Act (SEERA) (§ 3512 et seq.) unconstitutionally impinged upon the "merit principle" of article VII (Cal. Const., art. VII § 1, subd. (b)) and the SPB's article VII mandate to "enforce the civil service statutes" and to "prescribe classifications" (§ 3, subd. (a)), claims similar to Lund's. (29 Cal.3d at pp. 181-196.)

In defining the term "merit principle," *Pacific Legal Foundation* relied largely on the ballot argument accompanying the 1934 initiative measure proposing California Constitution article XXIV. (29 Cal.3d at pp. 182-185.) Said the court: "As this ballot argument demonstrates, the 'sole aim' of the amendment was to establish, as a constitutional mandate, the principle that appointments and promotions in state service be made solely on the basis of merit. Having established the 'merit principle' as a matter of constitutional law [fn. omitted], and having established a nonpartisan Personnel Board to administer this merit principle, the constitutional provision left the Legislature with a 'free hand' to fashion 'laws relating to personnel administration

for the best interests of the State.' " (*Id.* at pp. 183-184.) The court reiterated that "the amendment simply sought to eliminate the 'spoils system' of public employment," and noted that "in designating the statutes that may be superseded by a memorandum of understanding without legislative approval [i.e., a memorandum that is the product of the negotiation process authorized by SEERA], the Legislature excluded those statutes relating to classification, examination, appointment, or promotion, areas in which a potential conflict with the merit principle of employment would be most likely to occur." (*Id.* at p. 185; see also pp. 192, 194.)

Thus, the cornerstone of the constitutional merit principle is a competitive examination process that determines merit, effectiveness and fitness for appointment and promotion. (*Pinion* v. *State Personnel Board* (1938) 29 Cal.App.2d 314, 319 [84 P.2d 185]; *Snow* v. *Board of Administration* (1978) 87 Cal.App.3d 484, 488-489 [151 Cal.Rptr. 127].) The issue of *who hears out-of-class compensation claims* does not implicate the "merit principle" as defined in California Constitution Article VII, *Pacific Legal Foundation*, *Pinion* and *Snow*.

■ Nor does Lund fare any better in asserting that section 19818.16 conflicts with SPB's constitutional authority to "enforce the civil service statutes." (Cal. Const., art. VII, § 3, subd. (a).) The court in *Pacific Legal Foundation* rejected a similar argument for two reasons: first, the ballot argument to the 1934 initiative measure proposing article XXIV rendered the "merit principle" in state employment inviolate, but explicitly disclaimed any intent to restrict the Legislature to any particular mode of personnel administration (29 Cal.3d at p. 194); secondly, "contemporary and subsequent legislative acts demonstrate that [the phrase, 'enforce the civil service statutes'] . . . has not been construed by the Legislature as precluding it from investing agencies other than the State Personnel Board with administrative responsibilities affecting civil service employees." (*Id.* at p. 195.) The court then listed numerous statutes investing various entities other than SPB with administrative authority over civil service employment-related matters. (*Ibid.*) Concluding its discussion on this issue, the *Pacific Legal Foundation* court stated: "Although the constitutional amendment established the nonpartisan State Personnel Board to ensure that the merit principle was properly safeguarded, the amendment did not propose to preclude the Legislature from adopting new personnel administration procedures, which do not impinge upon the merit principle, outside of the State Personnel Board's sphere. As the Court of Appeal stated in *California State Employees' Assn.* v. *Williams* (1970) 7 Cal.App.3d 390, 398 [86 Cal.Rptr. 305]: 'Article XXIV was presented to California voters in 1934 as a means of establishing a merit system of employment which would eliminate the spoils system. [Citation.] It was not presented as an organic *blue-*

*print* for the structure of agencies within the state's executive branch.' " (29 Cal.3d at pp. 195-196.)

By enacting the procedure addressing out-of-class compensation claims codified in section 19818.16, the Legislature has simply adopted a new personnel administration procedure. Section 19818.16 merely specifies who hears out-of-class compensation claims. As such, it does not impinge upon the merit principle. A review of the manner in which out-of-class compensation claims were handled prior to DPA's creation bolsters this conclusion.

Prior to 1980, the State Board of Control reviewed and settled such claims pursuant to its authority to hear claims for money for which settlement is not otherwise provided for by statute or constitutional provision. (§ 905.2, subd. (d).) Although the Board of Control's policy was to obtain recommendations from the employing department and the SPB, the final decision on such claims rested with the Board of Control after it conducted a hearing.

In 1980, section 18715 was enacted to simplify the out-of-class compensation claim procedure. (Stats. 1980, ch. 319, § 1, pp. 654-655.) The Board of Control's policy of obtaining an SPB evaluation was said to create duplicative, and consequently inefficient, levels of review. Since the Board of Control gave greater weight to the SPB recommendation, SPB was deemed the more appropriate agency to handle out-of-class compensation claims. Consequently, section 18715 transferred the authority to review and settle such claims from the Board of Control to the SPB.

Section 18715 was repealed in 1985 when authority to review and settle out-of-class compensation claims was transferred to DPA pursuant to the enactment of section 19818.16. (Stats. 1985, ch. 1015, §§ 4, 20, pp. 3281, 3283, 3285, eff. Sept. 26, 1985.)

What this history makes clear is that the issue of who hears out-of-class compensation claims was never thought to be one of burning constitutional dimension. For nearly five decades—from 1934 to 1980—the Board of Control retained the final say on such claims; it was vested with such power precisely because no statute or constitutional provision otherwise governed the settlement of those claims. (§ 905.2, subd. (d).)

Granted, prior to the enactment of section 18715 in 1980 there was some concern that the Board of Control, in deciding out-of-class compensation claims, did not always follow SPB policies on controlling out-of-class work. But the primary reason section 18715 was enacted was to make the out-of-class compensation claim procedure more efficient. Issues of efficiency

rather than constitutionality prompted section 18715's enactment. And behind the enactment of any worthwhile personnel administration procedure is the goal of efficiency.

■ Section 19818.16 also does not infringe upon SPB's constitutional authority to "prescribe. . .classifications." (Cal. Const., art. VII, § 3, subd. (a).) There is no problem with SPB *prescribing* classifications and DPA *applying* those classifications to determine whether a state civil service employee should be reimbursed for working out-of-class. (See § 19818.10.)[4]

Furthermore, the Legislature created DPA with the relevant constitutional prescriptions clearly in mind. As noted in *Pacific Legal Foundation*, such "a focused legislative judgment on the question enjoys significant weight and deference by the courts." (29 Cal.3d at p. 180.) DPA was created to manage the "nonmerit aspects of the state's personnel system." (§ 19815.2.)[5] DPA has succeeded to SPB's administrative powers with respect to the Personnel Classification Plan, "[s]ubject to Article VII of the California Constitution." (§ 19818.)[6] Moreover, the Legislature has stated in section 19818.16, subdivision (b),[7] that if a provision in a (SEERA) memorandum of understanding conflicts with DPA's authority to hear out-of-class compensation claims, the provision governs. Based on this part of section 19818.16, it is clear the Legislature does not think there is any constitutional restriction on who can hear out-of-class compensation claims.

Lund's reliance on *Snow* v. *Board of Administration, supra*, 87 Cal.App.3d 484, *Mierke* v. *Department of Water Resources* (1980) 107 Cal.App.3d 58 [165 Cal.Rptr. 490], and *Ligon* v. *State Personnel Board* (1981) 123 Cal.App.3d 583 [176 Cal.Rptr. 717] is misplaced. Those cases hold that "the mere assumption and performance of the duties of a higher classification cannot require that the employee be appointed to it." (*Snow, supra*, at p. 489; *Mierke, supra*, at p. 60; *Ligon, supra*, at pp. 589-590.) To hold otherwise, stated *Ligon*, would mean that civil service appointment and promotion would no longer be made exclusively on merit as ascertained

---

[4]Section 19818.10 provides: "[DPA] shall assess the adequacy of the Personnel Classification Plan and, as needed, recommend changes in the plan to the State Personnel Board. The recommendations shall include the need for establishment of additional classes or the abolishment or alteration of existing classes."

[5]Section 19815.2 provides: "There is hereby created the Department of Personnel Administration, for the purposes of managing the *nonmerit aspects of the state's personnel system*."

[6]Section 19818 provides: "Subject to Article VII of the California Constitution, the department succeeds to and is vested with the duties, purposes, responsibilities, and jurisdiction exercised by the State Personnel Board with respect to the administration of the Personnel Classification Plan."

[7]See footnote 3, *ante*.

by competitive examination. (*Ligon, supra*, at p. 591.) As noted by the trial court, this line of decisions illustrates the distinction between the merit principle and an out-of-class compensation claim.

Lund's reliance on *Fair Political Practices Com.* v. *State Personnel Bd.* (1978) 77 Cal.App.3d 52 [143 Cal.Rptr. 393] is also misplaced. That decision was overruled in *Pacific Legal Foundation*, the high court noting the *Fair Political Practices* court had not considered the ballot argument accompanying the 1934 proposed constitutional amendment (art. XXIV) in its analysis of the SPB's constitutional powers. (29 Cal.3d at p. 192.)

Nor can Lund rely on EDD's personnel manual, which delineates out-of-class issues as merit related and provides that SPB hears appeals in such matters. The manual is simply an employee handbook, not an authoritative statement of the law. The provision concerning SPB's appellate jurisdiction was written in November 1984; section 19818.16 was not enacted until 1985.

"Like pay for like work," Lund argues, is inherently a part of the merit principle, the SPB's classification power, *and* an out-of-class compensation claim; consequently, only SPB can hear such claims. Preliminarily, we note the majority opinion in *Pacific Legal Foundation* expressly declined to determine whether the "like pay for like work" concept is a constitutionally based doctrine embedded in either the merit principle or the classification power, or alternatively is solely of statutory origin. (29 Cal.3d at p. 193, fn. 16; see, e.g., §§ 18500, subd. (c)(1), 18850, 19826, subd. (a).) In our view, "like pay for like work" is inherently a part of *establishing* a classification, not inherently a part of *who determines* whether a particular employee has worked in an established classification. As such, DPA's authority to hear out-of-class compensation claims does not contravene the "like pay for like work" principle.

Lund's "like pay for like work" argument is based largely on the dissent in *Pacific Legal Foundation*. (29 Cal.3d at pp. 203-209.) But even that dissent supports our conclusion.

The dissenters in *Pacific Legal Foundation* viewed the "like pay for like work" principle as an integral part of SPB's constitutional mandate under California Constitution article VII to prescribe job classifications within a merit system of civil service employment. (29 Cal.3d at pp. 203, 207.) Said the dissent: "The establishment of job 'classifications' without control over the salaries for the affected positions within the classification would constitute a meaningless act. Without exercising such power to prescribe salary classifications, the SPB could not possibly assure that the constitutionally

mandated merit principle is respected and enforced." (*Id.* at p. 203.) The dissent deemed SEERA unconstitutional precisely because SEERA purported to transfer the fixing of civil service salaries to a bargaining process subject to political considerations. (*Id.* at pp. 203-204.)

Our conclusion does not vest any power in DPA to prescribe job classifications within a merit system of civil service employment. Under our view of section 19818.16, SPB retains all power to classify. DPA applies SPB-determined classifications to particular claims to decide whether a state employee should be reimbursed for working out of class.

Even if we were to assume that the "like pay for like work" principle is a constitutionally based doctrine embedded in the merit principle and the classification power, that assumption would not help Lund. The merit principle in this sphere, as the trial court correctly noted, "is a means for ensuring that job classifications are *created* which will ensure state employees receive like pay for like work." (Italics added.) In contrast, an out-of-class compensation claim, as the trial also correctly noted, "assumes particular classifications have been *created equitably*, but that the employee is called upon to perform work outside his otherwise proper classification." (Italics added.)

We have previously noted the distinction, under the *Snow-Mierke-Ligon* line of cases, between the merit principle (in the sphere of appointment and promotion) and an out-of-class compensation claim. (See p. 188, *ante.*)

In his last gasp, Lund attempts to harmonize California Constitution article VII with section 19818.16 by arguing that the section mandates an out-of-class procedural scheme whereby DPA exercises only ministerial powers under SPB's substantive direction. Lund's efforts are unnecessary in light of our analysis above. Moreover, such a harmonization would resurrect the duplicative levels of review section 18715 (§ 19818.16's predecessor) sought to eliminate.

We conclude section 19818.16 is not unconstitutional under article VII, sections 1 through 3, of the California Constitution.

IV-VI*

. . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, at page 174.

## Disposition

The judgment is reversed only to the extent it sustained without leave to amend Lund's administrative mandamus claim for promotion, as discussed in section V of this opinion. In all other respects, the judgment is affirmed. Respondents are awarded their costs of appeal.

Carr, Acting, P. J., and Sims, J., concurred.