1 Cal.Rptr.3d 278 (2003)
109 Cal.App.4th 1574
STATE PERSONNEL BOARD, Plaintiff and Appellant,
v.
DEPARTMENT OF PERSONNEL ADMINISTRATION et al., Defendants and Respondents.
Association of California State Attorneys and Administrative Law Judges et al., Plaintiffs and Respondents,
v.
Department of Personnel Administration et al., Defendants and Appellants.
State Personnel Board, Plaintiff and Respondent,
v.
Department of Personnel Administration et al., Defendants and Appellants.
Nos. C034943, C040263, C032633.
Court of Appeal, Third District.
June 27, 2003.
Rehearing Granted July 22, 2003.
*282 Howard L. Schwartz, Chief Counsel, Marguerite D. Seabourn, Linda Diane Buzzini, Sacramento, for Defendant, Appellant, and Respondent Department of Personnel Administration.
Carroll, Burdick & McDonough, Ronald Yank, Gregg McLean Adam, San Francisco, for Defendant and Appellant Department of Forestry Firefighters.
Bill Lockyer, Attorney General, David S. Chaney, Senior Assistant Attorney General, Damon M. Connolly and Miguel A. Neri, Supervising Deputy Attorneys General, as Amicus Curiae on behalf of Defendant and Appellant Department of Personnel Administration.
Steven B. Bassoff, Eisen & Johnston Law Corporation, Jay-Allen Eisen, Marian M. Johnston, Jay-Allen Eisen Law Corporation and Jay-Allen Eisen, Sacramento, for Plaintiffs and Respondents Association of California State Attorneys and Administrative Law Judges et al.
Elise S. Rose, Chief Counsel, Dorothy Bacskai Egel, Kronick, Moskovitz, Tiedemann & Girard and Susan R. Denious, Sacramento as Amicus Curiae State Personnel Board on behalf of California State Attorneys and Administrative Law Judges.
Anne M. Giese, Sacramento, for Defendant and Appellant California State Employees Association.
VanBourg, Weinberg, Roger & Rosenfeld, William A. Sokol, Vincent A. Harrington, Oakland, Matthew John Gauger, for Defendant and Appellant International Union of Operating Engineers.
Bill Lockyer, Attorney General, Jacob Appelsmith, Senior Attorney General, Alicia M.B. Fowler, Supervising Attorney General, Michelle Littlewood, Deputy Attorney General, as Amicus Curiae Attorney General of California on behalf of Department of Personnel Administration.
Elise S. Rose, Chief Counsel, Dorothy Bacskai Egel, Kronick, Moskovitz, Tiedemann & Girard and Susan R. Denious, Sacramento, for Plaintiff and Respondent State Personnel Board.
Elise S. Rose, Chief Counsel, Dorothy Bacskai Egel, Kronick, Moskovitz, Tiedemann & Girard and Susan R. Denious, Sacramento, for Plaintiff and Appellant State Personnel Board.
Carroll, Burdick & McDonough, Ronald Yank and Gregg McLean Adam, San Francisco, for Defendant and Respondent Department of Forestry Firefighters.
Norman Hill, Chief Counsel, Wendy Breckon for Defendant and Respondent Department of Forestry and Fire Protection.
BLEASE, Acting P.J.
The California Constitution requires that the California State Personnel Board (SPB) "shall ... review disciplinary actions" taken against state civil service employees. (Cal. Const., art. VII, § 3, subd. (a).)
State civil service employees assigned to State Bargaining Units 8, 11, 12, and 13 (hereafter Units 8, 11, 12, and 13), represented by their unions, negotiated labor contracts with the Department of Personnel Administration (DPA), the governor's representative in labor contract negotiations. The labor contract, known as a "memorandum of understanding" (MOU) (Gov.Code, §§ 3513, subd. (b); 3515.5, 3517.5),[1] of each of the bargaining units, *283 provides an alternative dispute resolution mechanism for litigating a disciplinary action in a forum other than the SPB.
The SPB and the Association of California State Attorneys and Administrative Law Judges (State Attorneys), and a citizen taxpayer, sought writs of mandate to prohibit implementation of the disciplinary provisions of the MOUs. In SPB v. DPA (C032633), SPB sought a writ of mandate challenging the provisions of the Unit 8 MOU.[2] The trial court denied SPB's petition because it lacked standing to challenge the constitutionality of the disciplinary provisions of the MOUs. SPB appeals from the resulting judgment.
In State Attorneys v. DPA (C034943), State Attorneys and Gerald James, appearing as a taxpayer, filed an action in mandate against the DPA and the California Department of Forestry Firefighters (CDFF) to prohibit implementation of the disciplinary provisions of the Unit 8 MOU.[3] The trial court granted the writ and defendants appeal from the judgment.[4]
In SPB v. DPA (C040263), SPB filed an action in mandate against DPA, Marty Morgenstern, the Director of DPA, California State Employees Association (CSEA), the union representing employees assigned to Unit 11, and the International Union of Operating Engineers (IUOE), the union representing employees in Units 12 and 13, to prohibit implementation of the disciplinary provisions of the MOUs for Units 11, 12, and 13. The trial court granted a writ of mandate and the defendants appeal from the judgment.
In the interests of judicial economy, we consolidated the three appeals to resolve their common issues: (1) whether the SPB has standing to challenge an MOU that restricts its review of disciplinary actions, and (2) whether the disciplinary provisions of the MOUs negotiated by the DPA and Units 8, 11, 12 and 13, and the legislation which sanctions the MOUs, violate the constitutional mandate that SPB "review disciplinary actions."
We conclude SPB has standing to challenge an MOU which precludes it from carrying out its constitutionally mandated duty to review disciplinary actions. We also conclude the MOUs violate article VII, section 3, subdivision (a) of the California Constitution because they restrict SPB's adjudicatory authority to review disciplinary actions taken against state civil service employees. Lastly, we conclude the implementing legislation violates article VII, section 3, subdivision (a), to the extent it sanctions the offending provisions of the MOUs. Nothing we say in the opinion affects the Legislature's authority to determine the adjudicatory procedures by which the SPB conducts its review of disciplinary actions.
We shall affirm the judgments in case number C034943 relating to the Unit 8 MOU, with the exception of the condition attached thereto (see fn. 22), and in case number C040263 relating to the MOUs of Units 11, 12, and 13. Because we affirm *284 the judgment in case number C034943, relating to the Unit 8 MOU, we shall dismiss as moot the appeal in case number C032633.

FACTUAL AND PROCEDURAL BACKGROUND

A. The Unit 8 MOUs
Two versions of the Unit 8 MOU are at issue in case number C034943, the original and an amended version, adopted by the DPA and the CDFF as a "return" to the peremptory writ of mandate issued by the trial court.
The original Unit 8 MOU provides that an employee charged with major discipline may elect either a direct appeal to the SPB or a grievance and arbitration procedure which transfers the authority to review disciplinary actions from the SPB to a Board of Adjustment (BOA), whose members are selected by the employer and the union. If the BOA does not reach a binding decision the employee or the employee's union may seek arbitration. The original Unit 8 MOU transfers minor disciplinary authority wholly to the BOA. Plaintiffs filed a writ of mandate to prevent implementation of the MOU.
The trial court ruled this procedure and the implementing legislation violated the provisions of article VII, section 3, subdivision (a). It issued a peremptory writ of mandate barring implementation of the Unit 8 MOU "unless and until provisions are made in the procedures for the [SPB]'s ultimate and meaningful review of disputed civil service disciplinary actions resolved by grievance or arbitration pursuant to the procedures."[5]
By way of a "return" to the peremptory writ of mandate the DPA and CDFF amended the original MOU, effective February 8, 2000, "to comply with the judgment and writ of mandate...."[6] The amended MOU provides the "modification shall be temporary (except where expressly noted) and the parties shall return to their original agreement if the Court of Appeal reverses the Superior Court judgment, or meet and confer if needed to modify their original agreement."
The Unit 8 MOUs were adopted pursuant to statutes that govern state employer employee relations. (§ 3512 et seq.) Section 3517 provides the Governor and a recognized employee organization may meet and confer regarding "wages, hours, and other terms and conditions of employment ...." An agreement on these subjects is embodied in a MOU "which shall be presented, when appropriate, to the Legislature for determination." (§ 3517.5.) If a provision of the MOU requires the expenditure of funds or requires legislative action to permit its implementation, the provision is not effective unless approved by the Legislature. (§ 3517.6.)
The Unit 8 MOU was approved by Assembly Bill No. 1291 (Stats.1998, ch. 1024, § 2), and signed by the Governor over the objection of the SPB. It was amended in relevant part by Statutes 2001, chapter 365, principally to provide that if the legislation and a Unit 8 MOU are in conflict the MOU will control unless the MOU requires the expenditure of state funds. (§§ 19574, subd. (c), 19575, subd. (b), 19576.5, subd. (e), 19578, subd. (b), 19582, subd. (h); see also § 3517.6, subds. (a)(3),(b).) In the case of minor discipline, the provisions of an expired MOU will *285 continue to apply. (§ 19576.5, subds.(a) & (f).)
The CDFF and the DPA originally entered into a Unit 8 MOU for the period July 1, 1998, through June 30, 1999. A superceding Unit 8 MOU extended coverage for the period July 1, 1999, to July 2, 2001. Its terms on discipline are identical to the terms of the Unit 8 MOU that expired in 1999. We call this the original MOU. (§ 19576.5, subds.(a) & (f).) This MOU was superceded by the amended MOU filed in response to the judgment of the trial court. In what follows we discuss the original and amended MOUs separately where appropriate. Where the provisions of the MOUs are the same we refer simply to the Unit 8 MOU.
Prior to the enactment of the implementing legislation, section 18670, subdivision (a), authorized the SPB to make investigations and hold hearings regarding the enforcement of the governing personnel statutes and rules and directed that such actions be taken upon the petition of an employee to enforce observance of article VII of the California Constitution. The implementing legislation altered this scheme of review with respect to the Units at issue in this litigation. Subdivision (c) of section 18670 was added to state: "[A]ny discipline, as defined by the memorandum of understanding [including both major and minor discipline], or Section 19576.5 [minor discipline] is not subject to either a board investigation or hearing."[7] By this provision the SPB is deprived of its investigatory and hearing powers regarding major and minor discipline. In addition, subdivision (e) of section 19576.5, which applies to Units 8, 12 and 13, provides that, as to minor discipline, with the exception of an agreement requiring the expenditure of funds, "a memorandum of understanding reached pursuant to Section 3517.5 .. . shall be controlling without further legislative action...."
The Unit 8 MOU incorporates the grounds of discipline set forth in section 19572.1 and the statutory definitions for both minor[8] and major[9] discipline. (Unit 8 MOU, § 19.2.4.) In addition to the statutory grounds for discipline applicable to other state employees (§ 19572), the Unit 8 MOU provides for discipline, "whether it is major or minor," for "just cause" pursuant to section 19572.1. (Unit 8 MOU, § 19.2.4.)[10]
The Unit 8 MOU provides for notice of disciplinary action (Unit 8 MOU, §§ 19.2.5.2-19.2.5.3.7) but also provides that "[f]ailure of the appointing power to comply with the notification requirements *286 contained in this subsection will not affect the validity of the action, or change the nature of the penalty imposed." (Unit 8 MOU, § 19.2.5.4.)[11]
An employee charged with a disciplinary action, whether major or minor, may invoke the jurisdiction of the SPB by a timely answer and appeal and compliance with the time frames of the Unit 8 MOU, or may file a grievance pursuant to the terms of the Unit 8 MOU. (Amended Unit 8 MOU, §§ 19.1.2; 19.2.8.2; 19.4.1.1.) If an appeal to the SPB is taken, the authority of the SPB is limited to "revoking the action or amending the penalty," except for such matters as back pay and "creative remedial solutions...." (Unit 8 MOU, § 19.2.9.1.)
In lieu of a direct appeal to the SPB of a disciplinary action, the Unit 8 MOU establishes a grievance procedure which provides for the hearing of a disciplinary action by a BOA consisting of two members selected by the employee and two by the employer. (Amended Unit 8 MOU, §§ 19.5.1.1; 19.5.1.1.1.) The BOA is not bound by common law, statutory rules of evidence, or technical or formal rules of procedure. (Amended Unit 8 MOU, § 19.5.1.2.2.) Unless it orders otherwise, the BOA considers only written materials provided prior to the hearing. (Amended Unit 8 MOU, §§ 19.5.1.2.8; 19.5.1.2.9.) A majority decision by the BOA is final and binding if agreed to by the employee, and is not judicially reviewable. (Amended Unit 8 MOU, § 19.5.1.3.4; Code Civ. Proc. § 1094.5, subd. (j).) In view of the fact the BOA has but four members, a majority vote requires a vote of at least three of the four members. (Amended Unit 8 MOU, § 19.5.1.2.4.)
If the BOA does not reach a binding decision the disciplinary action is sustained unless arbitration is sought by the union or the employee at the employee's expense. (Amended Unit 8 MOU, §§ 19.5.1.3.6; 19.5.1.3.5.) The BOA decision, unless appealed to the arbitrator, is considered a final and binding "settlement" agreement. (Amended Unit 8 MOU, § 19.5.1.3.4(a).) If the employee refuses to accept the decision, and does not seek arbitration, the disciplinary action remains in effect. An appeal to the arbitrator is conducted pursuant to Code of Civil Procedure sections 1280 et seq.
The SPB reviews a determination of the arbitrator adverse to the employee on the basis of the record of the arbitration solely on the ground whether the arbitrator's award is inimical to merit principles. (Amended Unit 8 MOU, §§ 19.5.3.1; 19.5.3.3.) If the SPB overturns the arbitrator the matter is returned to the arbitrator for a potentially endless renvoi of SPB and arbitrator decisions. (Amended Unit 8 MOU, §§ 19.5.4.1, 19.5.4.2.) The amended MOU provides for a limited judicial review of the SPB decision. (Amended Unit 8 MOU, § 19.5.4.3.)
If the BOA cannot reach a majority decision, the disciplinary action must be sustained, unless the employee's union invokes the arbitration procedures of section 19 of the Unit 8 MOU. (Unit 8 MOU, § 19.4.4.1.2.) And, as with an appeal to the *287 SPB, the BOA is authorized only to revoke the disciplinary action or amend the penalty imposed. (Unit 8 MOU, § 19.2.9.1.)[12]

B. Unit 11 MOU
Effective July 1, 1999, the DPA and the CSEA entered into a MOU governing civil service employees in Unit 11. Under that MOU, employees whose jobs require them to operate commercial vehicles, are subject to drug and alcohol testing (Unit 11 MOU, § 21.4.A.1), and may be dismissed for a first positive drug or alcohol test or for refusing the test. (Unit 11 MOU, § 21.4.C.2.) Employees who are disciplined or rejected during probation for a positive test, may elect between an appeal to the SPB in the usual manner or to the binding grievance and arbitration procedures set forth in the MOU.
Once the employee elects to use the grievance and arbitration procedure, there is no review by the SPB. In arbitrations involving adverse actions, the arbitrator determines if just cause exists and the appropriate remedy. The employee who appeals a rejection on probation has the burden of going forward and the burden of proof. (Unit 11 MOU, § 21.4.C.4.)
An employee dissatisfied with a decision rendered in the informal grievance procedure, within a specified period of time must go through a four step administrative grievance procedure. (Unit 11 MOU, §§ 6.7-6.10.) If the grievance is not resolved at Step 4, the union has the right to submit the grievance to arbitration. (Unit 11 MOU, § 6.12.) The arbitration is conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association. The union and the State each pay for one-half of the cost for arbitration (Unit 11 MOU, § 6.12.C), and the arbitrator's award is final and binding on the parties. (Unit 11 MOU, § 6.12.E.)
The Legislature approved the Unit 11 MOU, effective October 5, 1999 (Stats. 1999, ch. 630, § 2), and on September 11, 2000, enacted legislation implementing the provisions of the MOU. (§§ 18670, subd. (d); 19175, subds. (f) and (g); and 19576.6; Code Civ. Proa, § 1094.5, subd. (k); Stats. 2000, ch. 402, §§ 5, 6 & 7.) Under this legislation, SPB is divested of the authority to conduct an investigation or hearing of the drug test-related disciplinary actions or rejections during probation taken against a Unit 11 employee "who expressly waive[s] appeal to the [SPB] and invoke[s] arbitration proceedings" under the MOU. (§ 18670, subd. (d).) SPB is also divested of authority to conduct investigations, with or without a hearing, into the reasons for rejecting a probationer, if the employee in such a case, expressly waives appeal to the SPB and invokes arbitration proceedings pursuant to the MOU. (§ 19175, subds.(f) and (g).) Likewise, SPB is prohibited from reviewing suspensions of five (5) days or less and other specified disciplinary actions taken against Unit 11 employees who have been disciplined for positive drug test results upon the employee's waiver of an appeal to the SPB and invocation of the arbitration proceedings provided in the MOU. (§ 19576.6.) The MOU also eliminates judicial review of such adverse actions by way of administrative mandamus (Code Civ. Proa, § 1094.5, subd. (k)) and the arbitration decisions are only subject to limited judicial review under Code of Civil Procedure sections 1285 et seq. (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 10-11, 28, 10 Cal.Rptr.2d 183, 832 P.2d 899.)

*288 C. Units 12 and 13 MOUs
DPA and the IUOE entered into MOUs for Units 12 and 13 and the Legislature approved both MOUs, effective September 21, 1999. (Stats.1999, ch. 457, § 22.) These two MOUs have substantially the same binding grievance and arbitration procedures for adverse actions. We therefore jointly summarize their provisions.
The MOUs provide a mandatory, binding grievance procedure for "minor" adverse actions, as defined in the MOU,[13] without an independent disciplinary review by SPB. (Unit 12 MOU, art. 15, §§ A.2, B.1, B.2.c; Unit 13 MOU, art. 6, §§ A.2, B.1, B.2.c.)[14]
For major adverse actions,[15] the MOU provides that the employee must make an irrevocable election to appeal to the SPB and proceed in the usual manner, or proceed under the binding grievance and arbitration procedures outlined in the MOUs without SPB review once the employee "waives" review by the SPB. (Unit 12 MOU, art. 15, §§ A.2, B.1.b, D.1.b; Unit 13 MOU, art. 6, §§ A.2, B.1.b, D.1.b.)
The grievance procedure involves the BOA, which operates in much the same manner as the BOA does under the Unit 8 MOU. The BOA is composed of four members, two selected by each side. (Unit 12 MOU, art. 15, § D.3.a.(1); Unit 13 MOU, art. 6, § D.3.a.(1).)
Under the BOA procedures, the parties have a right to present oral testimony, but the procedures do not require sworn testimony, the subpoenaing of witnesses, or the receipt into evidence of documents. (Unit 12 MOU, art. 15, §§ D.3.b.(1), (3) and (5), and E.2.b; Unit 13 MOU, art. 6, § D.3.b.(1), (3) and (5).) Representation by counsel is prohibited. (Unit 12 MOU, art. 15, § D.3.b.(10); Unit 13 MOU, art. 6, § D.3.b.(10).) Nor is the BOA bound by common law, statutory rules of evidence, technical rules of procedure, SPB precedential decisions, or merit principles. (Unit 12 MOU, art. 15, § D.3.b.(2); Unit 13 MOU, art. 6, § D.3.b.(2).)
If the BOA decides the matter by majority vote,[16] the decision is final and binding and may be enforced as an arbitration award. (Unit 12 MOU, art. 15, § D.4.a.(1); Unit 13 MOU, art. 6, § D.4.a.(1).) If the BOA deadlocks or otherwise fails to reach *289 a binding decision, the action is sustained unless the union elects to appeal by way of arbitration. (Unit 12 MOU, art. 15, § D.4.a.(2); Unit 13 MOU, art. 6, § D.4.a.(2).) Thus, the employee has no independent right to appeal to arbitration, and a binding decision is subject only to limited judicial review pursuant to Code of Civil Procedure sections 1285 et seq. (Moncharsh v. Heily & Blase, supra, 3 Cal.4th at pp. 10-11, 28, 10 Cal.Rptr.2d 183, 832 P.2d 899.)
If the matter is appealed to arbitration, both sides are allowed to introduce evidence, call and cross-examine witnesses, and submit written briefs. (Unit 12 MOU, art. 15, § D.4.d.(2); Unit 13 MOU, art. 6, § D.4.d.(2).) The arbitrator's award is final and binding and is only subject to limited judicial review pursuant to Code of Civil Procedure sections 1285 et seq. (Moncharsh v. Heily & Blase, supra, 3 Cal.4th at pp. 10-11, 28, 10 Cal.Rptr.2d 183, 832 P.2d 899.)
The decision of the BOA is implemented by the parties as outlined in the MOU. If the BOA or arbitrator sustains the adverse action, the union must withdraw the grievance with prejudice; if the BOA or arbitrator modifies the adverse action, the employer must amend the action consistent with the decision; if the BOA or arbitrator revokes the adverse action, the employer is to withdraw the disciplinary action with prejudice. (Unit 12 MOU, art. 15, § G, Unit 13 MOU, art. 6, § G.)
With respect to minor adverse actions, the BOA is empowered to sustain, modify or revoke minor disciplinary actions by majority vote.[17] If the BOA deadlocks, the parties are required to request assistance from the State Mediation and Conciliation Service, who will assist them to reach a "majority decision." (Unit 12 MOU, art. 15, § E.2.a.(1), 13 Unit MOU, art. 6, § E.2.a.(1).) No provision is made for appeal to arbitration in such cases.[18]
The same legislation that implements the provisions of the Unit 8 MOU also implements the provisions of the Unit 12 and Unit 13 MOUs. (See §§ 18670, subd. (e), 19575, subd. (b), 19578, subd. (b).)
The SPB filed a petition for writ of mandate and complaint, seeking a temporary stay and injunctive relief relating to the implementation and enforcement of the challenged portions of the MOUs for Units 11, 12, and 13, sections 18670, subdivision (d), 19175, subdivisions (f) and (g), and 19576.6, and Code of Civil Procedure section 1094.5, subdivision (k), and declaratory relief that the provisions of these three MOUs and the implementing legislation are unconstitutional.
The trial court denied SPB's application for a temporary stay but issued an alternative writ directing the parties to set the matter for a hearing on the merits. After trial, a judgment was filed, declaring the provisions of the MOUs that deprive the SPB of its constitutional authority to review discipline and rejections during probation and the implementing legislation facially *290 unconstitutional. A peremptory writ of mandate was filed January 28, 2002. The writ permanently enjoins respondents from enforcing the provisions of the MOUs covering Units 11, 12, and 13 with respect to the review of disciplinary or other actions taken against the employees in these three units, submitting an appeal of an adverse action or rejection during probation to the process set forth in the MOUs, or taking any further action to enforce the provisions of Code of Civil Procedure section 1094.5, subdivision (k), or Government Code sections 18670, subdivision (d), 19175, subdivisions (f) and (g), and 19576.6.
The DPA, the IUOE and the CSEA appeal from the judgment. In the interests of judicial economy, we have consolidated the three appeals.[19]

DISCUSSION

I

SPB Has Standing to Challenge Restrictions on its

Jurisdiction to Review Disciplinary Actions
DPA and IUOE contend SPB lacks standing to challenge the constitutionality of the MOUs and the implementing legislation because (1) SPB lacks a sufficient beneficial interest to establish standing, (2) subordinate political entities may not challenge state action where the interest being protected belongs to individual employees, (3) standing is inconsistent with SPB's quasi-judicial duty of neutrality that would result in a conflict of interest for the board, and (4) SPB's constitutional duty to enforce civil service statutes does not establish standing.
SPB contends it has standing to challenge legislation that infringes on its constitutional mandate to review disciplinary actions taken against state civil service employees and to enforce the civil service laws. It premises its standing on either the beneficial interest test or the public right test.
We agree with SPB that it has standing to challenge the constitutionality of the MOUs and the implementing legislation under the public right test.

A. Public Right Exception
"The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor." (Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 439, 261 Cal.Rptr. 574, 777 P.2d 610; Baker v. Carr (1962) 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 677-678.) Consistent with this purpose, Code of Civil Procedure section 1086 states the general rule that a party seeking a writ of mandate must be "beneficially interested" in the subject matter of the action to have standing to seek the writ. (Associated Builders & Contractors, Inc. v. San Francisco Airports Com. (1999) 21 Cal.4th 352, 361-362, 87 Cal.Rptr.2d 654, 981 P.2d 499; Waste Management of Alameda County, Inc. v. *291 County of Alameda (2000) 79 Cal.App.4th 1223, 1232, 94 Cal.Rptr.2d 740.) "Beneficially interested" means the petitioner has "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (Carsten v. Psychology Examining Com. (1980) 27 Cal.3d 793, 796, 166 Cal.Rptr. 844, 614 P.2d 276.)
The California Supreme Court has recognized an exception to the general rule where the matter involves public rights and public duties. (See Green v. Obledo (1981) 29 Cal.3d 126, 144, 172 Cal.Rptr. 206, 624 P.2d 256; Bd. of Soc. Welfare v. County of L.A. (1945) 27 Cal.2d 98, 100-101, 162 P.2d 627; Common Cause, supra, 49 Cal.3d at p. 439, 261 Cal.Rptr. 574, 777 P.2d 610.) "`[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.'" (Bd. of Soc. Welfare, supra, 27 Cal.2d at pp. 100-101, 162 P.2d 627, citation omitted.) This passage refers to the "citizen" form of public interest standing which promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right. (Green v. Obledo, supra, 29 Cal.3d at p. 144, 172 Cal.Rptr. 206, 624 P.2d 256; see also League of Women Voters v. Eu (1992) 7 Cal.App.4th 649, 657, 9 Cal. Rptr.2d 416 [applying public rights exception of standing to non-profit organizations].)
The public right exception has also been extended to governmental bodies or officials who seek the writ in order to fulfill a legal duty. In this regard, the Supreme Court in Bd. of Soc. Welfare, supra, 27 Cal.2d at page 99, 162 P.2d 627, applied the exception to the state welfare board, allowing it to seek a writ to compel the county to issue replacement welfare warrants to three elderly people. The court stated: "`[generally, when a power or duty is imposed by law upon a public board or officer, and in order to execute such power or perform such duty, it becomes necessary to obtain a writ of mandamus, it or he may apply for the same.'" (Id. at p. 101, 162 P.2d 627.) The Court found the board had standing because public aid to the needy was a matter of statewide concern under the administration of the board, which was designated by statute as the single agency with full power to supervise the administration of the public assistance plans. (Ibid.)
Relying on Board of Social Welfare, California courts have afforded standing to a variety of public bodies or officials to apply for the writ when necessary to perform their public duties. For example, the California Secretary of State in his official capacity was held to have standing to challenge dismissal of his complaint alleging violation of the election disclosure laws. (Brown v. Superior Court (1971) 5 Cal.3d 509, 514, 96 Cal.Rptr. 584, 487 P.2d 1224.) The Supreme Court found the Secretary's "beneficial interest is amply demonstrated by a showing that he bears overall responsibility for administering the disclosure laws the constitutionality of which is now challenged. The uncertainty engendered by the respondent court's order of dismissal requires final resolution in order that the Secretary of State may be properly and fully informed with respect to these public responsibilities." (Ibid.; see also Johnson v. City of San Pablo (1955) 132 Cal.App.2d 447, 458, 283 P.2d 57 [where two cities sought to annex the same territory, *292 one city granted standing to attack validity of the other city's proceedings so it could be determined which city should collect taxes and fees and render services in the territory]; Jefferson Union School Dist. v. City Council (1954) 129 Cal.App.2d 264, 267, 277 P.2d 104 [school district granted standing to challenge proposed annexation which would remove territory from district and its tax rolls].)
SPB is in an analogous position to the petitioner in Board of Social Welfare. As we discuss more fully in parts II and III, the constitutional provisions adopted by the voters of this state created the SPB and established the merit principle in state civil service employment. (Cal. Const., art, VII, § 1, subd. (b).) That principle requires that hiring and promotion of state civil service employees be only on the basis of merit. (Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 184, 172 Cal. Rptr. 487, 624 P.2d 1215, fn. 7 (Brown).) To ensure that these goals are not thwarted by those in power, article VII designates SPB as the sole agency to administer this principle by, among other things, reviewing the discipline of state civil service employees. (Cal. Const., art. VII, § 3; Brown, supra, 29 Cal.3d at pp. 184, 197-198, 172 Cal.Rptr. 487, 624 P.2d 1215; Gee v. California State Personnel Bd. (1970) 5 Cal.App.3d 713, 717, 85 Cal.Rptr. 762; Department of Parks & Recreation v. State Personnel Bd. (1991) 233 Cal.App.3d 813, 823, 284 Cal.Rptr. 839.J In short, SPB has a public duty imposed by the Constitution to administer the merit principle by reviewing the discipline of state civil service employees. As we conclude in part III, that duty is eliminated by the MOUs and the implementing legislation.
Under these circumstances, SPB has a strong interest in obtaining a judicial determination of the validity of the challenged MOUs and the legislation which authorizes the MOUS in order to determine how to perform its constitutional duties. As such, SPB has "a sufficient interest in the subject matter of the dispute to press their case with vigor." (Common Cause, supra, 49 Cal.3d at p. 439, 261 Cal.Rptr. 574, 777 P.2d 610.)
The courts have recognized that a public entity or official charged with administering the law has standing to litigate the constitutional validity of that law. Thus, in Senate of the State of Cal. v. Jones (1999) 21 Cal.4th 1142, 90 Cal.Rptr.2d 810, 988 P.2d 1089, the California Supreme Court found the Senate and the Superintendent of Schools had standing to challenge the constitutionality of an initiative measure that would have a significant and direct effect upon the role and operation of the legislative branch. (Id. at p. 1156, fn. 9, 90 Cal.Rptr.2d 810, 988 P.2d 1089; see also Selinger v. City Council (1989) 216 Cal.App.3d 259, 264 Cal.Rptr. 499 [holding City Council had standing to challenge the constitutionality of a statute where the local citizens' rights are inextricably bound up with the City's duties to carry out the law].) Likewise, the SPB seeks to challenge the constitutionality of legislation that, as we explain in part III, will have a significant and direct effect upon the role and operation of the SPB.
We conclude that as the sole public body constitutionally mandated to review disciplinary actions against state civil service employees consistent with the merit principle, SPB has standing to challenge the MOUs and implementing legislation which divest it of its jurisdiction to perform its constitutional duty.

B. SPB is a Quasi-Judicial Neutral Party
DPA and IUOE claim SPB lacks standing because it acts as a neutral party in a quasi-judicial role in reviewing discipline *293 under article VII. Relying on Municipal Court v. Superior Court (Gonzalez) (1993) 5 Cal.4th 1126, 22 Cal.Rptr.2d 504, 857 P.2d 325 (Gonzalez), IUOE argues that SPB has no standing to defend its own jurisdiction even when the subject matter of litigation or legislation affects its own operations.
In Gonzalez, the municipal court had a practice of using commissioners to determine that probable cause existed to detain a criminal defendant. (5 Cal.4th at p. 1128, 22 Cal.Rptr.2d 504, 857 P.2d 325.) The superior court granted a petition for writ of habeas corpus by a defendant detained after a commissioner's finding of probable cause on the ground this determination was invalid. (Id. at pp. 1128, 1130, 22 Cal.Rptr.2d 504, 857 P.2d 325.) When the prosecutor failed to appeal the ruling, the municipal court sought a writ of mandate which the Court of Appeal denied because the municipal court lacked standing. (Ibid.) The Supreme Court upheld the Court of Appeal and adopted its opinion which concluded that "[i]n a mandamus proceeding, it is the parties [in the underlying proceeding], not the courts [whose rulings are challenged], which have a `beneficial interest' in the outcome of a case; the role of the respondent court is that of a neutral party. [Citations.] This is true even where the subject matter of the mandamus proceeding is a ruling which significantly affects the operations of the petitioning court." (Id. at p. 1129, 22 Cal. Rptr .2d 504, 857 P.2d 325.)
We find Gonzalez inapposite. First, the decision did not rely on the public interest exception which the Supreme Court found inapplicable because "[t]here is no public duty to use court commissioners to make probable cause determinations. No public right would be enforced should the Municipal Court prevail in the mandamus proceeding. [Citation.]." (Gonzalez, supra, 5 Cal.4th at p. 1132, 22 Cal.Rptr.2d 504, 857 P.2d 325.) Furthermore, unlike the municipal court in Gonzalez, SPB does not come before this court as a neutral party in a quasi-judicial role challenging a ruling against it in which it adjudicated a dispute between parties. Rather, it comes before us as the administrator of the merit principle seeking to perform its constitutional duty to review discipline in furtherance of that principle.

C. Subordinate Political Entity
Defendants also rely on Native American Heritage Com. v. Board of Trustees (1996) 51 Cal.App.4th 675, 683, 59 Cal. Rptr .2d 402 (Native American) for the principle that state agencies, as subordinate political entities, may not raise constitutional challenges to actions by other state agencies. Defendants misapply this principle.
In Star-Kist Foods, Inc. v. County of Los Angeles (1986) 42 Cal.3d 1, 227 Cal.Rptr. 391, 719 P.2d 987, the Supreme Court noted "the well-established rule that subordinate political entities, as `creatures' of the state, may not challenge state action as violating the entities' rights under the due process or equal protection clauses of the Fourteenth Amendment or under the contract clause of the federal Constitution. 'A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator. [Citations.]'" (Id. at p. 6, 227 Cal. Rptr. 391, 719 P.2d 987, quoting Williams v. Mayor of Baltimore (1933) 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015, 1020.) The rule also applies to suits between state agencies. (Native American, supra, 51 Cal.App.4th at p. 683, 59 Cal.Rptr.2d 402; see also City of New Orleans v. New Orleans *294 Water Works Co. (1891) 142 U.S. 79, 12 S.Ct. 142, 35 L.Ed. 943.)
The court in Star-Kist reviewed the basis for and application of the "no standing" rule. The rule "has generally been applied in two types of cases: those in which the state has altered political subdivisions' boundaries [citation], and those involving state modification of a benefit previously granted to a subdivision. [Citations.].)" (42 Cal.3d at p. 8, 227 Cal.Rptr. 391, 719 P.2d 987.) The court concluded the cases applying this rule are merely "`adhere[ing] to the substantive principle that the Constitution does not interfere with a state's internal political organization.'" (Ibid.)
Considering a different but related view of the "no standing" rule, the court in Star-Kist observed that "[provisions like the Fourteenth Amendment and the contract clause `confer fundamental rights on individual citizens'; the supremacy clause, in contrast, `establishes a structure of government which defines the relative powers of states and the federal government.' [Citations.] Political subdivisions cannot assert `constitutional rights which are intended to limit governmental action vis-a-vis individual citizens' but may invoke the supremacy clause to challenge preempted state law. [Citation.] Otherwise, `such legislation and regulation often would go unchecked even though expressly prohibited by the Constitution.' [Citation.]" (Ibid.)
The limitation on the scope of the "no standing" rule is not restricted to supremacy challenges, but extends to other provisions such as the commerce clause, which also define the relative powers of the state and federal governments and protect collective as opposed to individual rights. (Zee Toys, Inc. v. County of Los Angeles (1978) 85 Cal.App.3d 763, 778, 149 Cal.Rptr. 750 [allowing county to assert commerce clause violation because it relates to national interests rather than personal interests].)
In sum, the rule prohibiting one political entity from asserting constitutional violations against another is confined to challenges based on provisions protecting an individual's rights against the power of the state, principally under the equal protection, due process and contract clauses of the state and federal Constitutions. The rule does not prohibit one governmental entity from asserting constitutional claims against another if the claims involve matters that relate to collective rights affecting the structure, jurisdiction, or relative power of a competing political entity. (Star-Kist, supra, 42 Cal.3d at p. 8, 227 Cal.Rptr. 391, 719 P.2d 987.)
In Native American, supra, 51 Cal. App.4th 675, 59 Cal.Rptr.2d 402, the court denied standing to a state university to challenge a state commission's authority to seek injunctive relief to mitigate development of state-owned land which threatened irreparable damage or inappropriate access to places sacred to Native Americans. (Id. at pp. 681-682, 59 Cal.Rptr.2d 402.) The university claimed the commission's authorizing statutes violated state and federal constitutional prohibitions against state establishment of religion and use of public land to further religion. (Id, at pp. 677-678, 683, 59 Cal.Rptr.2d 402.) The court held the university lacked standing because the "rights forwarded by [the university] are personal rights designed to protect individuals from governmental violations of their constitutional rights. They are not designed to be used as leverage by one state agency in a dispute with another agency about appropriate use of state owned land." (Id. at p. 686, 59 Cal. Rptr .2d 402.)
*295 Article VII, section 3, subdivision (a), of the California Constitution serves a dual purpose. The SPB protects civil service employees from politically partisan action inconsistent with the merit principle (Brown, supra, 29 Cal.3d at pp. 197-198, 172 Cal.Rptr. 487, 624 P.2d 1215) and also protects the right of the people to a merit based civil service system, a system which "`promote[s] efficiency and economy in State government.'" (Id. at pp. 182-183 & fn. 6, 172 Cal.Rptr. 487, 624 P.2d 1215, quoting Ballot Pamph., Proposed Amends, to Cal. Const, with arguments to voters Gen. Elec. (Nov. 6, 1934), argument in favor of Prop. 7, p. 12.) Thus, SPB serves to protect the personal rights of civil service employees and the collective rights of the State and its citizenry.
As we discuss in part III, by divesting the SPB of jurisdiction to review major and minor civil service disciplinary actions upon the employee's election, the MOU and its implementing legislation, directly and significantly effect the SPB's role and operation in protecting those rights.
For these reasons, SPB can challenge the MOU and implementing legislation as violative of its constitutional duty to review disciplinary actions.

II

SPB's Adjudicatory Authority

Derives from the Constitution
In 1913, the Legislature created the first state civil service system to combat the "spoils system" of political patronage in state employment. (Brown, supra, 29 Cal.3d at pp. 181-182, 172 Cal.Rptr. 487, 624 P.2d 1215; see also State Personnel Bd. v. Fair Employment & Housing Com. (1985) 39 Cal.3d 422, 436, 217 Cal.Rptr. 16, 703 P.2d 354 (State Personnel Bd.); Larson v. State Personnel Bd. (1994) 28 Cal. App.4th 265, 272, 33 Cal.Rptr.2d 412 (Larson); Lund v. Cal. State Employees Assn. (1990) 222 Cal.App.3d 174, 184, 271 Cal. Rptr. 425 (Lund).) By the early 1930's, the statutory system was acknowledged to be a failure. (Brown, supra, 29 Cal.3d at p. 182, 172 Cal.Rptr. 487, 624 P.2d 1215; Lund, supra, 222 Cal.App.3d at p. 184, 271 Cal.Rptr. 425.)
In 1934, the People responded with an initiative which added former article XXIV to the California Constitution. (Brown, supra, 29 Cal.3d at p. 182, 172 Cal.Rptr. 487, 624 P.2d 1215.) It established that appointments and promotions in state service would be based solely on merit (the "merit principle") and created the nonpartisan SPB to "administer and enforce ... any and all ... laws relating to the state civil service...." (3 Deerings Cal.Codes Annot., Constitutional Annotations 1849-1973 (1974) Art. XXIV, § 3, adopted Nov. 6, 1934, p. 663; emphasis added.) Under these provisions "[t]he power to discipline employees was largely transferred from various officials and departments to the State Personnel Board." (Boren v. State Personnel Board (1951) 37 Cal.2d 634, 639, 234 P.2d 981.) "Sections 2(c), 3(a), and 5(a) of article XXIV of the Constitution vest the State Personnel Board with jurisdiction over all dismissals, demotions, and suspensions in the state civil service." (Id. at p. 638, 234 P.2d 981.) Thus, in conferring enforcement authority upon the SPB, article XXIV designated the Board as the agency in which the adjudicatory function would vest.
This was the understanding of the Legislature when, in 1937, it enacted legislation to "facilitate the operation of Article XXIV of the State Constitution." (Stats. 1937, ch. 753, § 1(a), pp.2085 et seq.) It directed the SPB to "provide for dismissals, demotions, suspensions, and other punitive action for or in the State civil service in accordance with Article XXIV" and to "make investigations and hold hearings *296 ... concerning the enforcement and effect of this act and to enforce ... the provisions of Article XXIV...." (Id. at § 35(c) & (d), pp.2088-2089; emphasis added.) Included in the legislation were provisions for the SPB adjudication of punitive actions involving an adjudicatory hearing and a decision by the Board. (Id. at § 173, pp. 2106-2108.) "It is apparent from [article XXIV] that the Constitution authorized] the Legislature to specify the powers of the board and that, pursuant to that authorization, the board has been vested with adjudicatory power." (Shepherd v. State Personnel Board (1957) 48 Cal.2d 41, 47, 307 P.2d 4.)
In 1970, article XXIV was revised by the Constitutional Revision Commission.[20] With respect to the adjudicatory power, the 1970 revision augmented the enforcement language of the 1934 version of article XXIV with the addition of the provision for "review [of] disciplinary actions." (See California Correctional Peace Officers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133, 1152, 43 Cal.Rptr.2d 693, 899 P.2d 79 (California Correctional Peace Officers Assn.) ["authority over employee disciplinary appeals ... add[ed to] ... the constitutional authority of the Board ... in 1970...."].) In 1976, article XXIV was repealed, but the reorganization adopted its provisions verbatim as article VII.[21] (Brown, supra, 29 Cal.3d at p. 184, fn. 8, 172 Cal.Rptr. 487, 624 P.2d 1215; Lund, supra, 222 Cal.App.3d at p. 184, 271 Cal. Rptr. 425.) In its present form article VII, section 3, provides as follows:
"The [SPB] shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions."
This provision differs from the 1934 version of article XXIV in two respects. While it retained the jurisdiction of the SPB to "enforce the civil service statutes," it went further in placing in the Constitution the SPB's authority to "prescribe probationary periods and classifications" and to "review disciplinary actions." It distinguished these provisions from "other rules authorized by statute...." The meaning of "review disciplinary actions" is thus a question of constitutional law which the Legislature is not free to change.
That is the conclusion reached by the California Supreme Court. It has said that review of disciplinary actions ensures the "continuance of [civil service] employees' right to appeal to the Board." (California Correctional Peace Officers, supra, 10 Cal.4th at pp. 1152-1153, 43 *297 Cal.Rptr.2d 693, 899 P.2d 79.) The term "appeal" in this context refers to the entire adjudicatory procedure and not just the appellate review of a decision made in another forum.[22] That meaning is embodied in the constitutional requirement that the SPB "review disciplinary actions." (Emphasis added.) An "action" is the act taken by the agency in imposing discipline. It does not refer to the procedural means by which the action is reviewed. Rather, the power is reserved to "the Legislature to prescribe the procedures by which employee appeals [are] to be resolved." (California Correctional Peace Officers Assn., supra, 10 Cal.4th at p. 1153, 43 Cal. Rptr.2d 693, 899 P.2d 79.) In any event "[t]he State Personnel Board is the administrative body charged with the enforcement of the Civil Service Act, including the review of punitive action taken against employees." (Skelly v. State Personnel Bd. (1975) 15 Cal.3d 194, 201, 124 Cal.Rptr. 14, 539 P.2d 774, fn. omitted.)
The purpose in granting the SPB "jurisdiction to review disciplinary actions of civil service employees [is] to protect civil service employees from politically partisan mistreatment or other arbitrary action inconsistent with the merit principle embodied in article VII." (Brown, supra, 29 Cal.3d at pp. 197-198, 172 Cal.Rptr. 487, 624 P.2d 1215.) The statutory procedures which implement the constitutional mandate were in place when the present version of section 3, subdivision (a), was enacted and generally follow the adjudicatory provisions of the 1937 enactment. Under these provisions, the Board has the right to investigate and "to enforce the observance of Article VII ...." (§ 18670, subd. (a).) The procedures described in sections 19574 through 19578 grant rights of the employee to notice of a disciplinary action (§ 19574), to answer (§ 19575), to have an evidentiary hearing before the Board at which the State bears the burden of persuasion (§§ 19578, 19582), and the right to a decision by the Board (§ 19582). In addition, the employee has the right to judicial review of a decision by the Board. (Code Civ. Proa, § 1094.5.)
These provisions, which set forth SPB's adjudicatory functions, generally define the statutory scope of the constitutional mandate to "review disciplinary actions." When considered in the light of its historical context and the constitutional mandate that the civil service system be based upon merit, the term "review" must be construed to refer to an adjudicatory function rather than a limited appellate function over an adjudicatory procedure vested in some other body. To hold otherwise would severely restrict and undermine SPB's ability to enforce the merit principle by insulating agency disciplinary decisions from de novo review.

III

The Constitutionality of the MOUs

and Implementing Legislation
At issue is whether the provisions of the MOUs which foreclose or restrict, at the election of an employee, adjudicatory review of disciplinary actions by the SPB, violate the constitutional mandate of article VII, section 3, subdivision (a), that the SPB "review disciplinary actions."

*298 A.

The Merit System
In part II we showed that the adjudicatory authority of the SPB derives from the express provisions of section 3, subdivision (a), of article VII. The defendants dispute this view.
Their argument, simply stated, is this: article VII mandates the merit principle of civil service employment. The merit principle requires the elimination of the spoils system in recruitment, selection, and advancement of state employees. Other aspects of the civil service system, including the review of disciplinary actions, are statutory and therefore subject to legislative change.
The argument ignores the language of section 3, subdivision (a) that the SPB "shall ... review disciplinary actions." The defendants have no explanation for the adjudicatory function which this phrase delegates to the SPB and give it no meaning. They simply read the language out of the Constitution. They do so based on an interpretation of article VII in Brown, supra, 29 Cal.3d 168,172 Cal.Rptr. 487, 624 P.2d 1215, that upheld the constitutionality of the State Employer-Employee Relations Act (Gov.Code, § 3512 et seq.) (SEERA), enacted to regulate the state's labor relations with state employees.
In Brown the petitioners contended SEERA was unconstitutional because it conflicted with the general merit system of employment embodied in the civil service provisions of article VII of the Constitution. (29 Cal.3d at pp. 174, 181, 172 Cal. Rptr. 487, 624 P.2d 1215.) The Supreme Court reviewed the history of the constitutional amendment which became article VII. It determined "the `sole aim' of the amendment was to establish, as a constitutional mandate, the principle that appointments and promotions in state service be made solely on the basis of merit. Having established this `merit principle' as a matter of constitutional law, and having established a nonpartisan Personnel Board to administer this merit principle, the constitutional provision left the Legislature with a `free hand' to fashion `laws relating to personnel administration for the best interests of the State.'" (Id. at pp. 183-184, 172 Cal.Rptr. 487, 624 P.2d 1215, fn. omitted.)
From this premise, DPA and CDFF conclude the only constitutional functions of the SPB, within the merit principle, are those specifically related to appointment and promotion. They argue that SPB review of disciplinary action is not constitutionally mandated, but is a function of personnel administration, over which the Legislature has a free hand to fashion laws. We disagree.
The claim ignores the fact the SPB's authority to "review disciplinary actions" derives from an express grant of adjudicatory authority in article VII, section 3, subdivision (a) that is in addition to the SPB's authority to "prescribe probationary periods and classifications, [and] adopt other rules authorized by statute...." As noted, section 3, subdivision (a) distinguishes between matters which are constitutional and matters which are statutory. Like the prescription of probationary periods and classifications, the "review [of] disciplinary actions" is expressly made a matter of constitutional law.
In Brown, the court reviewed a facial challenge to the constitutionality of the statute that established a system of collective bargaining that did not conflict with article VII nor involve a disciplinary action. (29 Cal.3d at p. 200, 172 Cal.Rptr. 487, 624 P.2d 1215 ["no actual jurisdictional conflict between PERB and the State Personnel Board confronts us in this proceeding"]; See also State Personnel Bd., *299 supra, 39 Cal.3d at p. 441, 217 Cal.Rptr. 16, 703 P.2d 354.) The petitioners argued that SEERA facially violated the Constitution in two ways. First, the collective bargaining process conflicted with the general merit principle of civil service employment. (Brown, supra, 29 Cal.3d at p. 181, 172 Cal.Rptr. 487, 624 P.2d 1215.) Second, the task of setting salaries (which SEERA made a subject of collective bargaining) flowed from the SPB's constitutional authority to "`prescribe ... classifications'" and "`enforce the civil service statutes....'" (Id. at p. 186, 172 Cal.Rptr. 487, 624 P.2d 1215.)
Brown considered whether the provisions of SEERA granting PERB jurisdiction to investigate and devise remedies for unfair practices might be invalidated by the SPB's authority to "review disciplinary actions." It said that, with respect to meeting and conferring in good faith over wages and working conditions and reprisals against an employee for protected activity, "PERB could clearly adjudicate unfair practice charges against the state without any danger of conflict with the personnel board's disciplinary action jurisdiction." (29 Cal.3d at p. 197, 172 Cal. Rptr. 487, 624 P.2d 1215.)
The court also considered the possibility that "the jurisdiction of the State Personnel Board and PERB [might] overlap," and suggested the provisions could be harmonized in cases where the "specialized watchdog functions" of PERB might "involve the consideration of ... disciplinary action." (29 Cal.3d at pp. 197-199, 172 Cal.Rptr. 487, 624 P.2d 1215.)[23]
No such harmony can be achieved in this case. The MOUs simply provide an alternative means by which the SPB is deprived of its jurisdictional authority to review disciplinary actions. The MOUs set forth procedures which, at the election of the employee, preclude the SPB from adjudicating disciplinary actions except where the employee is authorized to seek the limited appellate review of an arbitration which is adverse to the employee. This plainly conflicts with the adjudicatory function which is embodied in the direction that the SPB "shall ... review disciplinary actions." (Emphasis added.)
Citing Cal. Correctional Peace Officers Assoc., supra, 10 Cal.4th 1133, 43 Cal. Rptr.2d 693, 899 P.2d 79, defendants argue adamantly the SPB's jurisdiction and power with respect to disciplinary actions are statutory and subject to legislative modification. In Cal. Correctional Peace Officers Assoc., the Supreme Court stated: "The authority over employee disciplinary appeals was initially vested in the [SPB] by statute. The addition of that power to the constitutional authority of the [SPB] occurred in 1970 when section 3 of former article XXIV of the California Constitution was revised. The revision added the provision which gave the executive officer of the [SPB] the power to administer and enforce civil service statutes. The apparent purpose of adding reference to the [SPB]'s authority over appeals was not to limit the Legislature's power to establish civil service procedures, but simply to ensure continuance of the employees' right to appeal to the [SPB]." (Id. at pp. 1152, 1153, 43 Cal.Rptr.2d 693, 899 P.2d 79.)
As we have explained, the constitutional authority to review disciplinary actions is an explicit addition to the SPB's constitutional *300 authority to enforce the civil service laws under former article XXIV, which was carried out in the adjudicatory functions imposed on the SPB in the 1937 legislation. When the review of disciplinary actions was added to the Constitution in 1970 the language derived its meaning from this history. While the Legislature has authority to regulate the procedure by which the SPB reviews disciplinary actions, there is no constitutional warrant for assignment of the adjudicatory function to any other body than the SPB. "`[A]ll such legislation must be subordinate to the constitutional provision, and in furtherance of its purpose, and must not in any particular attempt to narrow or embarrass it.'" (Hale v. Bohannon (1952) 38 Cal.2d 458, 471, 241 P.2d 4, quoting Chesney v. Byram (1940) 15 Cal.2d 460, 464, 101 P.2d 1106.)
In addition to the cases cited in Part II, numerous court decisions have held the SPB's power to review disciplinary actions is derived from the Constitution. (Gee v. California State Personnel Bd., supra, 5 Cal.App.3d at p. 717, 85 Cal.Rptr. 762 ["the State Personnel Board is a statewide administrative agency which is created by, and derives adjudicating power from, the state Constitution"]; Department of Parks & Recreation v. State Personnel Bd., supra, 233 Cal.App.3d at p. 823, 284 Cal. Rptr. 839["[u]nder ... constitutional grant, the [SPB] is empowered to `review disciplinary actions'"]; Kristal v. State Personnel Bd. (1975) 50 Cal.App.3d 230, 236, 123 Cal.Rptr. 512, disapproved on other grounds in Barber v. State Personnel Bd. (1976) 18 Cal.3d 395, 402-403, 134 Cal.Rptr. 206, 556 P.2d 306 ["The State Personnel Board is an agency with adjudicatory powers created by the California Constitution"]; Ramirez v. State Personnel Bd. (1988) 204 Cal.App.3d 288, 293, 251 Cal.Rptr. 9 ["The State Personnel Board derives its adjudicative power from the state Constitution."].) Defendants' argument ignores both the explicit language of the Constitution and these judicial authorities.
The central function of SPB is to administer the state civil service in accordance with the merit principle. (Cal. Const., art. VII, §§ 1, subd. (b) and 3, subd. (a); Brown, supra, 29 Cal.3d at p. 184, 172 Cal.Rptr. 487, 624 P.2d 1215.) SPB's express adjudicatory authority is a necessary counterpart to the language of article VII, section 1, subdivision (b) concerning appointments and promotions, because without it, employers which comply with the competitive examination requirement in hiring an employee would be free to terminate an employee for spurious reasons in violation of the merit principle.
As the court recognized in Fee v. Fitts (1930) 108 Cal.App. 551, 556, 291 P. 889, "[w]here there are no restrictive provisions the power of appointment carries with it the power of removal." Indeed, the power to discipline and remove an employee is merely the tail end of the appointing power and subject to the same evils. Article VII provides restrictions on the entirety of that power by limiting the power to appoint (Cal. Const., art VII, § 1, subd. (b)) and the power to discipline (id., § 3, subd. (a)), subjecting both powers to enforcement by the SPB to ensure compliance with the merit principle.
The MOUs and implementing legislation do not merely regulate the SPB's procedures for review of disciplinary actions. The Unit 8 and 11 MOUs not only authorize an employee to elect a grievance procedure in lieu of review by the SPB but encumber the grievance procedure with difficult, lengthy and costly procedures that fail to protect the merit principle.[24] *301 The Unit 12 and Unit 13 MOUs completely divest the SPB of its jurisdiction to review minor disciplinary actions and also divest it of its jurisdiction to review major disciplinary actions at the election of the employee.
In implementing these provisions, the Legislature has exceeded its statutory authority, and the legislation which sanctions these departures from the Constitution cannot be reconciled with the plain language of article VII, section 3, subdivision (a).

B.

Exclusivity
Defendants argue that if the SPB's jurisdiction to review disciplinary actions is constitutionally grounded, it is nevertheless not exclusive.
They cite the following language in Brown in support of this argument: "[N]othing in either the language or history of article VII, section 3, subdivision (a) suggests that in granting the State Personnel Board the power to `review disciplinary actions' the drafters intended thereby completely to preclude the Legislature from establishing other agencies whose specialized watchdog functions might also, in some cases, involve the consideration of such disciplinary action." (Brown, supra, 29 Cal.3d at pp. 198-199, 172 Cal.Rptr. 487, 624 P.2d 1215.)
In Brown, the Supreme Court held the SPB has non-exclusive jurisdiction over disciplinary actions in conjunction with the Public Employment Relations Board (PERB) when PERB investigates potential violations of SEERA. Also in State Personnel Bd., supra, 39 Cal.3d 422, 217 Cal. Rptr. 16, 703 P.2d 354, the court held the SPB has non-exclusive jurisdiction in conjunction with the Fair Employment and Housing Commission where a disciplinary action may have been taken because of discrimination against a protected class. (Id. at p. 439, 217 Cal.Rptr. 16, 703 P.2d 354.)
However, in the cases in which the SPB's jurisdiction has been found to be non-exclusive, the agency given adjudicatory power has been an agency with specialized functions which are not in competition with the SPB, and which were "established to serve a different, but not inconsistent, public purpose." (Brown, supra, 29 Cal.3d at p. 197, 172 Cal.Rptr. 487, 624 P.2d 1215; State Personnel Bd., supra, 39 Cal.3d at p. 439, 217 Cal.Rptr. 16, 703 P.2d 354.)
As expressed by the trial court, "specialized agencies with jurisdictions overlapping that of the SPB have been legislatively established to serve public purposes distinct from the purpose of the SPB's review of disciplinary actions to ensure a state civil service based on merit, and any jurisdictional conflicts between the specialized agencies and the SPB are to be accommodated either administratively or judicially.... The goal of such accommodation *302 is to harmonize, not defeat the respective jurisdictions of the specialized agencies and the SPB. . . The Legislature has no authority to create a specialized statutory scheme for the resolution of disputed civil service actions by entities other than the SPB, as it has done in statutorily implementing the MOUs' grievance and arbitration procedures that remove and supersede the SPB's constitutionally mandated jurisdiction."
This is not a case where another agency has been established whose specialized functions overlap but do not conflict with the jurisdiction of the SPB. Here, the Legislature has not created a specialized agency for a public purpose distinct from the SPB's purpose. Instead, the Legislature has delegated the entire adjudicatory authority of the SPB over state employees in Units 8 and 11, at the election of the employee, to another entity (i.e. a BOA or arbitrator) except, as to Unit 8, for a highly limited appellate review of an adverse arbitration decision. Moreover, as we have stated, for employees in Units 12 and 13, SPB's adjudicatory authority over minor disciplinary actions has been completely eliminated.
Defendant CDFF argues the SPB long has had discretion to refuse to hear appeals from suspensions of five working days or less under section 19576 and the SPB's argument that only it may hear such appeals if it so desires is intellectually dishonest. We disagree.
The constitutional grant of authority to the SPB does not preclude the reasonable regulation of the SPB adjudicatory procedures. Section 19576 provides the SPB need not conduct a hearing on the review of minor disciplinary action for conduct occurring during duty hours. It is still required to adjudicate the issue by means of an investigation and a determination. (§ 18670, subd. (a).) Whether a hearing is a necessary element of the SPB's authority to adjudicate a minor disciplinary action is not tendered in this proceeding. What is tendered is the SPB's fundamental jurisdiction to review such a proceeding.
The legislation by which the MOUs are sanctioned also run afoul of article VII. Under section 18670, subdivision (e), the SPB is divested of its jurisdiction to hold hearings and conduct investigations for state employees in Units 8, 12, and 13 in cases in which the provisions of an MOU are in conflict. The SPB is also divested of its jurisdiction to conduct investigations and hold hearings for employees in Unit 11 "who have been disciplined or rejected on probation for positive drug test results and who expressly waive appeal to the State Personnel Board and invoke arbitration proceedings ...." (§ 18670, subd. (d).)
These exceptions go to the SPB's review of disciplinary actions and strike at the heart of the SPB's constitutional authority.

C.

Waiver of Review
Defendants next argue that the right to an SPB review of disciplinary actions is a right which solely benefits the employee and for that reason the employee may waive review by the SPB. They equate the right of an employee to waive his or her rights to review by the SPB to a right to waive the SPB's constitutionally mandated duty to "review disciplinary actions." The analogy fails.
In support of their argument, defendants cite to Cal. Correctional Peace Officers Assoc., supra, 10 Cal.4th 1133, 43 Cal.Rptr.2d 693, 899 P.2d 79.
There, the court was asked whether the SPB loses jurisdiction of an appeal when it fails to render a decision within the statutorily *303 mandated period. The court held it does not lose jurisdiction and the employee may seek a writ of mandate either against the SPB to enforce compliance by a date certain, or directly against the employing power to compel reversal of the adverse disciplinary action. (10 Cal.4th at p. 1151, 43 Cal.Rptr.2d 693, 899 P.2d 79.)
The SPB argued that allowing the court to conduct a de novo disciplinary hearing would fail to give effect to the constitutional grant of authority to the SPB over review of civil service disciplinary actions. (Id. at p. 1152, 43 Cal.Rptr.2d 693, 899 P.2d 79.) The court responded that the constitutional grant of authority to the SPB does not preclude the reasonable regulation of the procedures of the SPB. Furthermore, the court stated, the provision mandating SPB review of disciplinary actions exists "solely to ensure that the right to appeal to the [SPB] exists...." Thus, the court concluded, the employee could waive the right to appeal if the board failed to comply with the statutory time limit, and that such a waiver was not inconsistent with the intent of article VII, section 3 of the Constitution. (Id. at p. 1153, 43 Cal.Rptr.2d 693, 899 P.2d 79.)
These dicta cannot support defendants' argument that an employee (or an employee's collective bargaining representative) may substitute the SPB's constitutionally mandated review of disciplinary actions by one of his or her own choosing. Under Cal. Correctional Peace Officers Assoc., an employee's option to seek a writ of mandate when the SPB does not act in a timely fashion does not terminate the SPB's jurisdiction to review the disciplinary action. (10 Cal.4th at p. 1138, 43 Cal.Rptr.2d 693, 899 P.2d 79.) Indeed, the holding in Cal. Correctional Peace Officers Assoc. preserved and enforced the employee's right to review by the SPB. Here, by contrast, the MOUs divest both the SPB and the courts of jurisdiction to review major civil service disciplinary actions when the employee has elected to forgo them, and as to Units 12, and 13, would completely divest the SPB and the courts of jurisdiction to review minor disciplinary actions. (See Code Civ. Proc, § 1094.5, subds. (j) and (k), relating to Units 8 & 11.)
As noted, Code of Civil Procedure section 1094.5, subdivision (j), has been amended relating to Unit 8 to provide that "for purposes of this section, the court is not authorized to review any disciplinary decisions reached pursuant to Section ... 19576.5 of the Government Code." Section 19576.5 applies to minor disciplinary actions involving Unit 8 employees. Moreover, as noted, the BOA is not bound by common law, statutory rules of evidence, or technical or formal rules of procedure, or SPB's precedential decisions. (Amended Unit 8 MOU, § 19.5.1.2.2; Unit 12 MOU, art 15, § D.3.b.(2); Unit 13 MOU, art. 6, § D.3.b.(2).) Under the Amended Unit 8 MOU, the BOA, unless it orders otherwise, considers only written materials provided prior to the hearing. (Amended Unit 8 MOU, §§ 19.5.1.2.8; 19.5.1.2.9.) Under the MOUs of Units 12 and 13, the BOA is not required to consider sworn testimony. (Unit 12 MOU, art 15, § D.3.b.(5); Unit 13 MOU, art. 6, § D.3.b.(5).)
In addition the Unit 8 MOU allows the BOA to consider any "just cause" as a ground of discipline regardless whether any of the other causes identified by the MOU and section 19572.1 are found. (Unit 8 MOU § 19.2.4.) The MOU does not define "just cause," a ground of discipline which is in addition to the lengthy list of grounds otherwise applicable, (ibid.), and as we have discussed, a disciplinary action based upon this ground is not subject to review by the SPB or the courts. As such, *304 it is subject to arbitrary application outside the merit principle.
As to minor discipline, not only is there no judicial review, but the hearing provisions of section 19582 do not apply to Units 8, 11, 12, and 13. (§ 19582, subds.(f), (g), and (h); see also §§ 19576.5, 19576.6, 19578.)
Moreover, as we have explained, it is incorrect to characterize the SPB's disciplinary function as a right held solely by the employee. The civil service system was created not merely to protect state employees, but also to eliminate the inefficiency that accompanied political patronage in state employment. The ballot argument in support of the initiative measure supporting article XXIV (now article VII) stated in part, "`[u]nder existing laws the State Civil Service Commission has power to exempt any position from civil service and to authorize employment in State service solely as a reward for political activity. A large number of State positions have from time to time been declared exempt, thereby affording an opportunity for the employment of persons selected solely for political reasons without regard for character, ability, or the best interests of the State. In such cases not only does the State suffer but citizens are not given a fair and equal chance for employment.'" (Brown, supra, 29 Cal.3d at p. 183, fn. 6, 172 Cal.Rptr. 487, 624 P.2d 1215, quoting Ballot Pamp., Proposed Amends, to Cal. Const, with arguments to voters, Gen. Elec. (Nov. 6, 1934), argument in favor of Prop. 7, p. 12, emphasis added.)
As the ballot argument recognized, it is the citizens of the state who suffer when the government employs workers who are not qualified to do their jobs. The state suffers when qualified workers are terminated and replaced with less-qualified politically-motivated hires. The state also suffers when the SPB loses its authority to determine the efficiency of the workings of the Civil Service system through its powers to investigate and review disciplinary actions and to establish uniform application of the disciplinary laws. For this reason, the investigation and review of disciplinary actions is critical to the operation of a state civil service system which promotes "`efficiency and economy in State government.'" (Brown, supra, 29 Cal.3d at p. 182, 172 Cal.Rptr. 487, 624 P.2d 1215.) This is a duty imposed on the SPB, and is not solely a right personal to each individual employee.
Defendants analogize the employee's waiver of SPB review to the case where an employee does not appeal or agrees to withdraw an appeal in conjunction with the employer's agreement to withdraw disciplinary action. We disagree.
In Larson, supra, 28 Cal.App.4th at page 270, 33 Cal.Rptr.2d 412, an ALJ conducted a hearing regarding the employee's dismissal. The parties eventually entered into a settlement agreement and requested the matter be taken off calendar pending the employer's withdrawal of the adverse action. (Id. at pp. 270-271, 33 Cal.Rptr .2d 412.) The SPB denied withdrawal of the matter. (Ibid.) The court of appeal held the SPB's authority is limited to reviewing disciplinary actions taken by appointing authorities. (Larson, supra, 28 Cal. App.4th at p. 274, 33 Cal.Rptr.2d 412.)
Larson provides no precedent for this case. Article VII, section 3 mandates that the SPB "shall ... review disciplinary actions." The SPB is a reviewing authority. It can review only a "disciplinary action." The SPB's authority does not encompass the right to limit an agency's authority to initiate or dismiss a disciplinary action. If there is no disciplinary action, the SPB has nothing to review.
*305 Such is not the case here. The MOUs and the implementing legislation divest the SPB of jurisdiction when a disciplinary action is pending. For this reason the defendants' analogy fails.
In the Amended Unit 8 MOU, the parties to the agreement attempt to take refuge in Larson. That MOU provides that after a decision by the BOA by majority vote "the State and employee shall pursuant to Larson ... enter into a separate written settlement agreement, the terms of which shall include ... those found in Appendix C." (Unit 8 MOU, § 19.5.1.3.4 b.) Appendix C contains a waiver of any right to an appeal. If the employee refuses to enter into a settlement agreement, the disciplinary action shall remain in effect and the employee "at his/her own expense may appeal the matter to arbitration." (§ 19.5.1.3.5.) If the BOA does not reach a binding decision (3 out of 4 votes) the disciplinary action is sustained but the employee may at his or her expense seek arbitration. (§ 19.5.1.3.6.)
This coercive procedure, in which Larson is used to cement an administrative decision, is a far cry from the facts of Larson, which allowed the State and the employee to voluntarily settle the disciplinary action without resort to the SPB.
The Amended MOU of Unit 8 provides a limited appellate function for the SPB if the employee chooses the grievance procedure. In that situation, SPB is asked to perform a limited review of the arbitration determination which follows upon an adjudication by the BOA and an arbitrator. Similarly, the parties to the Unit 12 MOU have sought the assistance of the SPB in implementing decisions rendered under the challenged grievance and arbitration procedures or alleged "settlement agreements" reached after the disciplinary action was adjudicated by the BOA. Again, the parties are seeking only limited appellate review by SPB.
However, as we have discussed, the "review" provided by article VII, section (3), subdivision (a), and set forth in sections 19574 through 19588, is adjudicatory. It includes the right to conduct a hearing, make findings of fact, exercise discretion, and issue a decision. The MOUs and the implementing legislation eliminate these safeguards when a grievance procedure is selected by the employee.
The SPB has been deprived of its general statutory authority to investigate and hear a disciplinary action. (§ 19670, subd. (d).) Under the grievance procedure provided in the Amended Unit 8 MOU, the SPB has no adjudicatory function. In fact, it has no function whatever unless there is an arbitration which the employee disputes. At that point the SPB reviews only the arbitration record and, if it finds a violation of the merit principle, refers the matter back to the arbitrator.
These changes violate the adjudicatory function delegated to the SPB by article VII, section 3, subdivision (a).

D.
Defendants offer a number of policy arguments in support of the MOUs.
Citing Brown, they argue that legislative acts carry a presumption of constitutionality, particularly where, as here, the Legislature enacts a statute with the relevant constitutional prescriptions in mind. (Brown, supra, 29 Cal.3d at p. 180, 172 Cal.Rptr. 487, 624 P.2d 1215.) The presumption of constitutionality does not attach where the statute's unconstitutionality "clearly, positively and unmistakably appears." (Lockheed Aircraft Corp. v. Superior Court (1946) 28 Cal.2d 481, 484, 171 P.2d 21.) Because the Constitution clearly and unmistakably assigns the right to "review" *306 disciplinary actions to the SPB, the Unit 8 MOU and its implementing legislation deserve no presumption of constitutionality.
Defendants also argue the Unit 8 MOU should be upheld because of the strong public policies favoring the use of arbitration, because the Unit 8 MOU promotes efficiency and cost savings, and because collective bargaining does not threaten the merit principle.
SPB review does not contravene the public policy favoring the use of arbitration. The SPB has instituted alternative dispute resolution procedures in some cases which operate under the jurisdiction of the SPB. In any event, the policies urged by defendants, no matter how strong, cannot trump a clear constitutional mandate.

Disposition
The judgments in case numbers C034943 and C040263 are affirmed with the exception that the condition attached to the judgment in case number C034943, referred to in footnote 22, shall be deleted. The original and Amended Unit 8 MOUs, the Unit 11, 12, and 13 MOUs, and the provisions of the Government Code by which the MOUs are authorized or implemented, including sections 18670, subdivisions (c), (d), & (e), 19574, subdivisions (c) & (d), 19575, subdivision (b), 19576.5, 19582, subdivisions (f), (g), & (h), and 19582.1, are invalid as in violation of article VII, section 3, subdivision (a). The appeal in case number C032633 is dismissed as moot.
We concur: DAVIS, J. and HULL, J.
NOTES
[1] All further section references are to the Government Code unless otherwise specified.
[2] The petition also sought relief against DPA, David Tirapelle, the Director of DPA, the California Department of Forestry and Fire Protection (CDFFP), Richard Wilson, the Director of the CDFFP, and the California Department of Forestry Firefighters.
[3] In case number C034943, plaintiff State Attorneys is an employee union which represents administrative law judges employed by the SPB to hear disciplinary actions. Plaintiff Gerald James has standing as a citizen and taxpayer. No issue of standing has been tendered in this case and given that James has standing as a taxpayer we do not consider the issue whether State Attorneys have standing.
[4] The SPB appears as amicus curiae in support of the judgment in case number C034943.
[5] As we later discuss (fn.22), this condition is invalid.
[6] A return to a writ is an answer. (Code Civ. Proc, §§ 1075, 1108.) However, for reasons stated we will consider both the original and amended MOUs.
[7] The Unit 8 MOU defines "discipline" to mean "punitive dismissals, demotions, suspensions, or reductions in pay." It includes both major and minor discipline. (Unit 8 MOU§§ 19.2.2.1.1, 19.2.2.2, 19.2.2.3.)
[8] "Minor discipline is defined as suspension for 5 days or less, or a reduction in pay of 5 percent (or one step) for five months or less (or equivalent)." (Unit 8 MOU, § 19.2.2.3.)
[9] "Major discipline is defined as dismissal, permanent demotion, suspension for more than 5 days, or a temporary demotion or reduction in pay greater than 5 percent (or one step) for more than five months (or equivalent)." (Unit 8 MOU, § 19.2.2.2.)
[10] "Discipline irrespective of whether it is major or minor, and regardless of whether it is grieved ... or appealed to the State Personnel Board, may be taken against an employee for (1) just cause; [and for] any of the causes for discipline listed in ... Section 19572.1...." (Unit 8 MOU, § 19.2.4.) The grounds of discipline in section 19572 are identical to those in section 19572.1 except that section 19572.1 was amended in 1999 to apply only to minor discipline pursuant to section 19576.5. (Stats.1999, ch. 446, § 21.) However, subdivision (c) thereof provides the MOU shall control when the provisions of the section are in conflict with the MOU.
[11] With respect to major disciplinary action, section 19574, subdivision (a) refers to notice of the "time within which an appeal must be filed [presumably to SPB]. . . ." Unit 8 MOU section 19.2.5.3.6 refers only to the "time within which grievance must be filed" and of the "right to file a grievance or appeal to the State Personnel Board." (Unit 8 MOU, § 19.2.5.3.5.) Accordingly, it provides no notice of the time requirements for review by the SPB. Notwithstanding, section 19.2.8.2 provides that "[flailing to appeal to SPB within the statutorily prescribed time frames waives the employees right of appeal to the [SPB]." (Unit 8 MOU.)
[12] The BOA, when reviewing minor disciplinary action, is composed of an additional member selected by the nonneutral members and may, by majority vote, "sustain, modify or revoke minor disciplinary actions." (Unit 8 MOU, § 19.5.2.1.1.)
[13] Minor discipline is defined as "a written reprimand, suspension for 3 working days or less, or reduction in pay of 5 per cent (or one step) for three months or less (or equivalent reduction in salary." (MOU Unit 12, art. 15, § B.2.c; MOU Unit 13, art. 6, § B.2.c.)
[14] Although respondents assert that employees in Units 12 and 13 have a choice between appealing to the SPB in the usual manner or invoking the negotiated alternative dispute resolution procedures contained in the MOU, nothing in the MOU specifies that a "choice" or "waiver" is available for employees who receive "minor" adverse actions. To the contrary, the MOU specifies that "[e]mployees who receive minor disciplinary actions . . . may seek review through the grievance procedure contained in this article" (Unit 11 MOU, art. 15, § A.2) and "[t]he grievance procedure contained in this article shall be the exclusive procedure under this contract for resolving disputes regarding all minor disciplinary (adverse) actions...." (Unit 11 MOU, art. 15, § B.l.a.)
[15] Major discipline is defined for Unit 12 MOU as "dismissal, permanent demotion, suspension of more than 3 working days, a temporary demotion, or deduction in pay of 5 percent (or one step) or greater for more than three months (or equivalent reduction in salary)." (Unit 12 MOU, art. 15, § B.2.b.) Major discipline is defined for Unit 13 MOU as "dismissal or suspension of more than 3 working days." (Unit 13 MOU, art. 6, § B.2.b.)
[16] There are four members on the BOA, thus a 4-0, 3-1 or 3-0 vote determines the matter. (Unit 12 MOU, art. 15. §§ D.3.a.(1), D.3.b.(7); Unit 13 MOU, art. 6, §§ D.3.a.(1), D.3.b.(7).)
[17] The BOA's composition is the same for minor discipline as it is for major discipline. (Unit 12 MOU, art. 15, § E.2.a.(2); Unit 13 MOU, art. 6, § E.2.a.(2).)
[18] Like the parties to the amended Unit 8 MOU, the parties to the Unit 12 MOU also have sought SPB's approval under section 18681 of dispositions in disciplinary actions which defendants refer to as "settlement agreements." These so-called "settlement agreements" appear to have been adjudicated by a BOA pursuant to the Unit 12 MOU. SPB has refused to approve these agreements and the IUOE has filed an unfair practice charge with the Public Employment Relations Board alleging SPB engaged in unlawful discrimination by refusing to approve such decisions.
[19] The SPB has requested that we take judicial notice of numerous records including the files of three cases before this court (case numbers C032633, C034943, and C039281.) We granted the requests in part. However, in view of the fact we have consolidated two of those cases in the present appeal (C032633, C034943) further judicial notice is unnecessary and we deny the request as to those files. The SPB's request for judicial notice of all matters judicially noticed by the trial court is denied as unnecessary because those records are already before this court as a part of the record on appeal. All other records requested in its judicial notice motion are denied as collateral or immaterial to a resolution of the issues raised on appeal.
[20] In Brown it was said that "the revision made no substantive changes in the provisions relevant to this action," but the court here referred to "the establishment of a general system of appointment and promotion based on merit...." (29 Cal.3d at pp. 184, fn. 8, 172 Cal.Rptr. 487, 624 P.2d 1215; 185.) The 1970 revision plainly made the "review [of] disciplinary actions" a constitutional mandate.
[21] Article VII of the California Constitution provides in relevant part:

"Section 1. (a) The civil service includes every officer and employee of the State except as otherwise provided in this Constitution.
"(b) In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination.
Sec. 2. (a) There is a Personnel Board of 5 members appointed by the Governor and approved by the Senate, a majority of the membership concurring, for 10-year terms and until their successors are appointed and qualified. ...
"Sec. 3. (a) The board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions."
[22] Because the SPB "review [of] disciplinary actions" is not limited to review by way of appeal, as would a judgment in an ordinary civil action, we will direct the deletion of the condition attached to the judgment in case number C034943 that "unless and until provisions are made in the procedures for the [SPB]'s ultimate and meaningful review of disputed civil service disciplinary actions resolved by grievance or arbitration pursuant to the procedures."
[23] As an example, the court cited to the experience of Los Angeles County, which avoided a jurisdictional conflict between its civil service commission and a local employment relations commission when the parties agreed "`a policy of not hearing any part of a complaint that is within the jurisdiction'" of the other party. (29 Cal.3d at p. 200, fn. 21, 172 Cal.Rptr. 487, 624 P.2d 1215.)
[24] Unlike the SPB, neither the BOA nor an arbitrator is mandated to consider principles of merit in rendering a decision. "`[A]rbitrators . . . may base their decision upon broad principles of justice and equity'" (Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 10, 10 Cal.Rptr.2d 183, 832 P.2d 899), which do not necessarily encompass considerations of merit. Moreover, under the challenged MOUs, neither the BOA nor an arbitrator is required to follow common law nor SPB's precedential decisions (Amended Unit 8 MOU, § 19.5.1.2.2, 19.5.2.4.2; Unit 12 MOU, art. 15, § D.3.b.(2); Unit 13 MOU, art. 6, § D.3.b.(2).) Furthermore, unlike decisions of the SPB, which must be supported by substantial evidence and consistent with state law (Shepherd v. State Personnel Board, supra, 48 Cal.2d at p. 46, 307 P.2d 4), the merits of an arbitration award are not subject to judicial review for errors of fact or law. (Amended Unit 8 MOU, § 19.5.2.5.2; Unit 12 MOU, art. 15, § D.4.e; Unit 13 MOU, art. 6, § D.4.e; Code Civ. Proc, § 1285 et seq.; Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 11, 10 Cal.Rptr.2d 183, 832 P.2d 899.)